# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

AUTHWALLET, LLC

       Plaintiff,

       v.

SQUARE, INC.

       Defendant.

Civil Action No. 1:21-cv-05463

# DEFENDANT SQUARE, INC.'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO CLAIM
# <u>PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101</u>

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

    A.    Procedural history ...................................................................................... 2

    B.    Statement of facts ...................................................................................... 3

LEGAL STANDARD ............................................................................................................ 7

ARGUMENT ........................................................................................................................ 9

I.     *Alice* Step One: Claim 1 is directed to an abstract idea—the conventional business practice of processing a discounted payment in a sales transaction. ................................................................................................... 9

II.    *Alice* Step Two: Claim 1 does not contain an inventive concept, considered individually or as an ordered combination, because it simply implements the abstract idea using generic computer components and techniques. .................................................................................................. 14

III.    The remaining claims are ineligible for patenting for the same reasons as claim 1 ...................................................................................................... 18

IV.    The claims are closely analogous to those found ineligible for patenting in prior Federal Circuit cases. ...................................................................... 19

V.    Claims 28–40 are patent-ineligible as a matter of law because they encompass transitory computer-readable media. ..................................... 22

CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)..............................................................9, 12, 13, 15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).......................................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................9

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018).............................................................9

*Bilski v. Kappos*,
    561 U.S. 593 (2010)......................................................................1, 8, 11

*Boom! Payments, Inc. v. Stripe, Inc.*,
    839 F. App'x 528 (Fed. Cir. 2021) ......................................................11, 21

*Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*,
    955 F.3d 971 (Fed. Cir. 2020).............................................................11

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014).............................................................14

*Carl Zeiss AG v. Nikon Corp.*,
    2018 WL 1846336 (C.D. Cal. Mar. 5, 2018)..........................................2, 23

*Coding Techs., LLC v. Miss. Power Co.*,
    2020 WL 8410430 (S.D. Miss. June 4, 2020) .........................................11

*Curb Mobility, LLC v. Kaptyn, Inc.*,
    434 F. Supp. 3d 854 (D. Nev. 2020).....................................................11

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
    986 F.3d 1367 (Fed. Cir. 2021)........................................................ *passim*

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)...........................................................18

*In re Elbaum*,
    2021 WL 3923280 (Fed. Cir. Sept. 2, 2021) ............................................................10, 11, 14

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020)..........................................................................................9

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)........................................................................................16

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...................................................................................13, 19

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020).........................................................................................13

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)....................................................................9, 13, 16, 19

*Fast 101 PTY Ltd. v. CitiGroup Inc.*,
    834 F. App'x 591 (Fed. Cir. 2020) ...................................................................................12

*Gammino v. AT&T*,
    127 F. Supp. 3d 264 (D. Del. 2015) .................................................................................11

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    No. 2:20-cv-02766, slip op. (W.D. Tenn. Sept. 15, 2021).................................................5

*Innovation Scis., LLC v. Amazon.com, Inc.*,
    778 F. App'x 859 (Fed. Cir. 2019) ...................................................................................11

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017).........................................................................................14

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017)....................................................................................2, 21

*Joao Bock Transaction Sys., LLC v. Fidelity Nat'l Info. Servs., Inc.*,
    122 F. Supp. 3d 1322 (M.D. Fla. 2015) ...........................................................................13

*Joao Bock Transaction Sys. LLC v. Jack Henry & Assocs., Inc.*,
    76 F. Supp. 3d 513 (D. Del. 2014) ...................................................................................17

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
    107 F. Supp. 3d 677 (E.D. Tex. 2015) ...............................................................................8

*Mankes v. Fandango, LLC*,
    238 F. Supp. 3d 751 (E.D.N.C. 2017) ..............................................................................11

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017)................................................................23

*Ex parte Mewherter*,
    No. 2012-007692, Decision on Appeal (P.T.A.B. May 8, 2013) ...........................23

*Motivation Innovations, LLC v. Petsmart, Inc.*,
    156 F. Supp. 3d 558 (D. Del. 2016)..........................................................12

*NantWorks, LLC v. Niantic, Inc.*,
    2021 WL 34850 (N.D. Cal. Jan. 4, 2021) ...............................................11

*NexusCard, Inc. v. Kroger Co.*,
    173 F. Supp. 3d 462 (E.D. Tex. 2016).................................................12, 15

*In re Nuitjen*,
    500 F.3d 1346 (Fed. Cir. 2007)...................................................2, 22, 23

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015).......................................................13, 15

*PricePlay.com, Inc. v. AOL Advertising, Inc.*,
    83 F. Supp. 3d 577 (D. Del. 2015)..........................................................11

*RDPA, LLC v. Geopath, Inc.*,
    --- F. Supp. 3d ----, 2021 WL 2440700 (S.D.N.Y. June 15, 2021) ................. *passim*

*SAP Am., Inc v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)................................................................8

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020).........................................................9, 15

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017)....................................................11, 15, 18

*Smartflash LLC v. Apple Inc.*,
    680 F. App'x 977 (Fed. Cir. 2017) .....................................................11, 14

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1378 (Fed. Cir. 2019)..............................................................13

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)..................................................................9

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ................................................8, 10, 11, 14

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015)............................................................................15

*Western Express Bancshares, LLC v. Green Dot Corp.*,
    816 F. App'x 485 (Fed. Cir. 2020) ..................................................................8, 11

**Statutes**

35 U.S.C. § 101 ....................................................................................................... *passim*

35 U.S.C. § 103 ..................................................................................................................6

35 U.S.C. § 285 ................................................................................................................21

**Rules**

Fed. R. Civ. P. 12(b)(6)...............................................................................................3, 7

**Other Authorities**

Dynamic IP Deals LLC, https://dynaipdeals.com/
    (last visited Oct. 15, 2021)................................................................................2

B. Tuttle, *The History of Coupons*, Time (Apr. 6, 2010), *available at*
    https://business.time.com/2010/04/06/the-history-of-coupons/
    (last visited Oct. 15, 2021)..............................................................................12

Unified Patents, *Dynamic IP Deals subsidiary, AuthWallet, patent challenged*
    (Aug. 11, 2021), https://www.unifiedpatents.com/insights/2021/8/11/dynamic-
    ip-deals-subsidiary-authwallet-patent-challenged
    (last visited Oct. 15, 2021)................................................................................2

U.S. Patent & Trademark Office, *Subject Matter Eligibility of Computer
    Readable Media* (Jan. 26, 2010) ....................................................................23

## INTRODUCTION

The '852 patent claims are textbook patent-ineligible. Prosecuted before the development of modern patent-eligibility jurisprudence, the claims recite a basic business practice that has been around for well over a century—processing a discounted payment in a sales transaction—using generic computer components like "processors," "storage areas," "mobile devices," and "modules" and generic computer functions like the transmission and receipt of information. The Supreme Court has been clear: claims like these—claims that merely involve "generic computer implementation" of "fundamental economic practice[s]" or conventional business methods—are ineligible for patent protection under 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 219, 223 (2014).

For example, in *Bilski v. Kappos*, the Court held ineligible a computer-implemented method of "hedging, or protecting against risk," because the concept of hedging is "a fundamental economic practice long prevalent in our system of commerce." 561 U.S. 593, 611 (2010). In *Alice*, the Court similarly held ineligible computerized systems and methods that implemented "the concept of intermediated settlement, *i.e.*, the use of a third party to mitigate settlement risk," because intermediated settlement is likewise a fundamental economic practice. 573 U.S. at 219. And, just this year, in *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367 (Fed. Cir. 2021), the Federal Circuit held ineligible claims to a computerized method for allowing loyalty-program participants to use loyalty-program points as currency with third-party vendors. These claims, the Court explained, were directed to a "long standing commercial practice" and were implemented using only "well-understood, routine, and conventional . . . . computer components (i.e., 'processors,' 'GUI,' and 'API') and functionality." *Id.* at 1377.

These holdings are sufficient to decide this case. Just like hedging, intermediated settlement, and using loyalty-program points, processing discounted payments is a fundamental

economic practice—something businesses have been doing since the advent of paper coupons in the 1800s. It is therefore an unpatentable abstract idea. And the '852 patent claims add nothing to the abstract idea save conventional computing techniques.

Several of the patent's claims, moreover—those that recite computer-readable media—do not pass muster under § 101 for a second, independent reason. These claims are *per se* ineligible for patenting because they encompass transitory signals. *See Carl Zeiss AG v. Nikon Corp.*, 2018 WL 1846336, at *3 (C.D. Cal. Mar. 5, 2018). Transitory signals, the Federal Circuit has held, "fall outside the plainly expressed scope of § 101" and therefore "are not patent-eligible" as a matter of law. *In re Nuitjen*, 500 F.3d 1346, 1357 (Fed. Cir. 2007).

Patent eligibility is a complex area of the law, and some cases present close questions. This is not one of those cases. After *Bilski* and *Alice*, claims that are "directed to an 'economic arrangement'"—like a discounted sales transaction—that is implemented using "generic computer technology" are not "anywhere near[] the margins of patent-eligibility." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379 (Fed. Cir. 2017); *see cxLoyalty*, 986 F.3d at 1377–78. The '852 patent claims are invalid under § 101. The Court should grant Defendant's motion and dismiss the complaint with prejudice.

## BACKGROUND

### A.    Procedural history

Plaintiff AuthWallet is the owner of U.S. Patent No. 9,292,852, the only patent asserted in this case. AuthWallet is a non-practicing entity and subsidiary of Dynamic IP Deals, a company that purports to specialize in "intellectual property monetization."[1] This lawsuit is one

---

[1] *See* Unified Patents, *Dynamic IP Deals subsidiary, AuthWallet, patent challenged* (Aug. 11, 2021), https://www.unifiedpatents.com/insights/2021/8/11/dynamic-ip-deals-subsidiary-authwallet-patent-challenged (last visited Oct. 15, 2021); Dynamic IP Deals LLC, https://dynaipdeals.com/ (last visited Oct. 15, 2021).

of three AuthWallet has recently filed alleging infringement of the '852 patent. AuthWallet voluntarily dismissed the other two cases with prejudice shortly after filing them. *See AuthWallet, LLC v. Am. Express Co.*, No. 1-21-cv-03219, Dkt. 12 (S.D.N.Y. June 7, 2021); *AuthWallet, LLC v. Citigroup, Inc.*, No. 4-21-cv-01203, Dkt. 11 (S.D. Tex. Aug. 19, 2021).

AuthWallet filed its complaint on June 22, 2021. Dkt. 1. Pursuant to the Court's July 30 Notice (Dkt. 6), Square filed a letter on September 2 notifying the Court of its intent to move to dismiss the complaint for failure to state a claim. Dkt. 12. Square now files this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## B.    Statement of facts

The '852 patent discloses and claims a "transaction processing service" that allows a customer to use her mobile device to apply discounts, or "stored value items," to a purchase made at a point of sale. '852 patent Abstract (Ex. A). The service "operates as an intermediary between acquirers of financial transaction requests and issuing institutions that process the financial transaction requests." *Id.* 2:47–50.

The basic process works as follows. A customer initiates a transaction from a merchant by providing "unique identifying information"—which might be contained in the customer's credit card or mobile phone—"to pay for a purchase." *Id.* 2:64–66; *see also id.* 7:61–8:21. The merchant transmits the identifying information in an initial authorization request to an "acquirer," which is a well-known "clearinghouse" entity involved with processing credit-card transactions. *Id.* 3:2–6; *see also id.* 7:21–29. The acquirer communicates with the intermediary service, which authenticates the request and uses the identifying information to retrieve the customer's information (e.g., her mobile number and credit-card information). *Id.* 3:6–17, 7:30–53. The intermediary service then communicates with the customer—for example, by sending a message to her mobile phone—so the customer can confirm or deny the transaction, decide

3

whether to apply any applicable discounts, and so on. *Id.* 3:18–43, 4:38–5:53, 7:54–11:2. If the transaction is confirmed, the intermediary completes the transaction by communicating with the "issuing institution" (e.g., the customer's bank). *Id.* 3:51–4:2, 11:14–62.

The '852 patent claims focus on the concept of allowing the customer to apply "stored value"—i.e., discounts—to reduce the price associated with a given transaction. "'[S]tored value,'" according to the specification, "refers to any type of value stored by the intermediary service that can be used to pay a portion of a transaction." *Id.* 4:40–42. "A 'stored value item' is a particular unit of stored value that may be applied to a transaction." *Id.* 4:42–43. The "stored value item" may take the form of a "voucher[]," which is "generally associated with a particularly customer and can be used for any transaction." *Id.* 4:63–65. "Other stored value items have conditions that restrict the transactions that they may be used for. These items are referred to as 'coupons' and function similarly to traditional paper coupons." *Id.* 5:4–7.

When the intermediary service receives an authorization request, it may send the customer a notification listing "available stored value items" as part of the transaction notification. *Id.* 11:65–67. The customer can then select which stored value items she wishes to apply to the transaction, and the intermediary service will "reduce[] the transaction amount based on the value of the applied items." *Id.* 12:1–4; *see also id.* 28:1–29:23.

The specification's description of this process is almost entirely functional. Where the patent does mention the physical components that actually accomplish the steps of the process, it does so in vague and generic terms. For example, the specification states that the process can use generic computer components such as "servers," "processors," "interconnects," "controllers," and "memory." *Id.* 13:16–32. The specification also describes "various modules to assist in processing authorization requests," which include an "authentication module," a "customer

management module," a "rules module," and a "stored value module," among others. *Id.* 14:30–21:5. These "modules" are described in functional, rather than structural, terms. *See id.* And the patent nowhere suggests that the patentee invented any of the computer components and techniques mentioned in the specification or utilized in the various modules. On the contrary, the conventional nature of these components and techniques is clear from the fact that the inventors saw no need to describe them in any detail in the specification, instead assuming that skilled artisans will understand those components and techniques and how they work. *Cf. Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 2:20-cv-02766, slip op. at 11 (W.D. Tenn. Sept. 15, 2021) (Ex. H) (if patent specification "does not disclose exactly how to achieve the end result," then the skilled artisan "would be left to his or her own devices in order to utilize routine and conventional methods to achieve those results").

Independent claim 1 is illustrative of the asserted claims. The claim is verbose and its syntax complex, but—shorn of technical jargon—it describes a simple concept: processing a discounted payment in a sales transaction. The claim reads as follows:

> A computer-implemented method for processing financial transaction data in a computing system including a processor and a storage area, the method comprising:
>
> receiving an authorization request generated as a result of a transaction by a purchaser at a point of purchase via an acquirer configured to receive authorization requests from a plurality of points of purchase, wherein the authorization request includes a purchaser identifier and transaction information, the transaction information including a transaction amount, and wherein the purchaser identifier identifies the purchaser that initiated the transaction;
>
> based on the authorization request, determining one or more stored value items to apply to the transaction, wherein each stored value item includes an associated value,
>
>> wherein the one or more stored value items are selected from a plurality of stored value items stored in the storage area, and

wherein the plurality of stored value items includes stored value items provided by a plurality of different third parties;

transmitting a transaction indication message to a mobile device associated with the purchaser identifier, wherein the transaction indication message includes information about the determined one or more stored value items;

receiving an indication from a user of the mobile device that at least one stored value item should be applied against the transaction;

applying the indicated at least one stored value item to pay a first portion of the transaction amount; and

initiating a payment process to pay a remaining portion of the transaction amount by providing a modified transaction amount to the acquirer for submission to a payment association.

'852 patent 32:46–33:13.

Independent claims 15 and 28 are directed to a "system for processing financial transaction data" and a "computer-readable medium containing instructions for processing financial transaction data," respectively, but they substantively mirror method claim 1. *Id.* 33:66–34:37, 35:21–56. The dependent claims add minor additional limitations, such as by specifying that the stored value item is a coupon (claim 2), that the stored value is "expressed as a currency amount" (claims 3, 17, 30), and that the "stored value item is determined based on a transaction history of the purchaser" (claims 9, 22, 35).

The '852 patent claims priority to an application filed in 2008. The Examiner rejected the original proposed claims on obviousness grounds under 35 U.S.C. § 103 but later issued a notice of allowance of amended claims in June 2014, just two weeks before the Supreme Court decided *Alice*, the foundational modern precedent on the patentability of business methods. *See* June 5, 2014 Notice of Allowance (Ex. B). After the *Alice* opinion issued, the Examiner withdrew the notice of allowance and rejected the proposed claims on § 101 grounds, concluding that they were directed to an abstract idea and lacked an inventive concept. *See* July 25, 2014 Notice of

Withdrawal (Ex. C); Sept. 3, 2014 Non-Final Rejection (Ex. D).

The patentee filed a reply to that rejection arguing that the Examiner had failed to "establish[] a *prima facie* case of subject matter ineligibility" because the Examiner "neither identified which abstract idea the pending claims are allegedly directed to nor provided any rationale or explanation . . . regarding why the pending claims are alleged to be directed to an abstract idea." Response to Non-Final OA of Sept. 3, 2014 at 12 (Ex. E). The patentee did not make any affirmative argument that the claims were patentable under the *Alice* test. *See id.*

Some months later, the Examiner issued a Notice of Allowance. *See* Mar. 11, 2015 Notice of Allowance (Ex. F). The Notice of Allowance repeated the Examiner's reasons for withdrawing the earlier obviousness rejection, but it did not mention the prior rejection based on *Alice* or explain why the proposed claims were patentable under § 101. *See id.* In fact, the pre- and post-*Alice* Notices of Allowance are substantively identical.

## LEGAL STANDARD

**Motion to dismiss.** "To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include 'sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *RDPA, LLC v. Geopath, Inc.*, --- F. Supp. 3d ----, 2021 WL 2440700, at *9 (S.D.N.Y. June 15, 2021) (Liman, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]lthough the Court must accept all the factual allegations of a complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

**Patent eligibility.** Laws of nature, natural phenomena, and abstract ideas are ineligible for patenting under 35 U.S.C. § 101. *Alice*, 573 U.S. at 216. Courts follow a two-step framework to analyze patent eligibility. *Id.* at 217.

At step one, the court "determine[s] whether the claims at issue are directed to one of

those patent-ineligible concepts." *Id.* "Fundamental economic practice[s]"—such as "exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk"—are abstract ideas under Supreme Court precedent. *Id.* at 219; *see also Bilski*, 561 U.S. at 611 (claims describing "the basic concept of hedging, or protecting against risk" were directed to an abstract idea); *Western Express Bancshares, LLC v. Green Dot Corp.*, 816 F. App'x 485, 486 (Fed. Cir. 2020) ("The Supreme Court and this court consistently hold that 'fundamental economic practices' are not patent eligible.") (quoting *Alice*, 573 U.S. at 219). Moreover, "business method patents"—such as the one at issue in this case—"raise special problems in terms of vagueness and suspect validity," *Bilski*, 561 U.S. at 608, because they often merely recite the performance of "commonplace business function[s]" using generic computers. *Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 704 (E.D. Tex. 2015) (Bryson, J.).

If the claims are directed to an ineligible concept, the court proceeds to step two, where it "consider[s] the elements of each claim both individually and as an ordered combination" to determine whether the claims contain an "inventive concept" that renders the invention patent-eligible. *Alice*, 573 U.S. at 217–18 (internal quotations omitted). Claims that simply use generic computer components and functions to carry out "well-understood, routine, conventional activities previously known to the industry" lack an inventive concept. *Id.* at 225; *accord RDPA*, 2021 WL 2440700, at *11.

"The Federal Circuit has affirmed that subject matter eligibility under Section 101 . . . is a question of law suitable for resolution at the pleading stage of a patent case." *RDPA*, 2021 WL 2440700, at *9 (citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)); *accord Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. Aug. 26, 2021). Indeed, "[f]ailure to recite statutory subject matter is the sort of 'basic deficiency' that

can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). While the eligibility inquiry may sometimes involve underlying issues of fact, such as "whether a claim element or combination of elements is well-understood, routine and conventional," *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367–68 (Fed. Cir. 2018), the patent itself will often demonstrate that the claims involve only well-understood, routine and conventional activity. Thus, "in many cases it is possible and proper" to determine patent eligibility on the pleadings. *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016). Moreover, in analyzing eligibility, courts may take judicial notice of "fundamental economic concepts and technological developments." *Affinity Labs of Tex., LLC v. Amazon.com Inc.,* 838 F.3d 1266, 1270 (Fed. Cir. 2016).

Similarly, courts may determine patent eligibility prior to claim construction, particularly where claim construction does not "affect the [patent-eligibility] analysis." *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020). That is the case here: the claims use ordinary language and do not require construction for purposes of the § 101 inquiry. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

## ARGUMENT

I.     *Alice* **Step One: Claim 1 is directed to an abstract idea—the conventional business practice of processing a discounted payment in a sales transaction.**

The '852 patent covers a computer-implemented version of a longstanding economic practice: processing a financial transaction that includes a discount for the purchaser. Claim 1— when stripped of its verbose syntax and technical jargon—recites a method in which (i) a customer initiates a sales transaction by providing a personal identifier contained in, e.g., a credit

9

card or a mobile device; (ii) an intermediary receives information about the transaction via an acquirer, consults a database to determine whether discounts are available for that transaction, and sends the customer a message; (iii) the customer indicates via a mobile device which discounts she wishes to apply; and (iv) the intermediary completes the transaction while accounting for any applied discounts in the final price paid. *See, e.g.*, '852 patent claim 1; *see also id.* 7:57–13:5.

As this Court observed in *RDPA*, "the use of a computer to perform well-known business practices [is] not patentable." *RDPA*, 2021 WL 2440700, at *13. But that is all claim 1 covers. As numerous cases have held, sales transactions generally—and discounted sales transactions specifically—are fundamental business practices and therefore ineligible for patenting. Claim 1 is ineligible because it merely automates this business practice using conventional, generic computer technology. The claim does not improve computer technology; instead, it simply uses existing computing technology like processors and mobile phones as a tool to implement a patent-ineligible abstract idea.

A sales transaction is the epitome of a "well-known business practice." Just weeks ago, in *In re Elbaum*, 2021 WL 3923280 (Fed. Cir. Sept. 2, 2021), the Federal Circuit observed that "managing sales transaction activity" is a fundamental economic practice and therefore concluded that claims to a "method of providing information and allowing customers to utilize that information to engage in a commercial transaction" were directed to an abstract idea. *Id.* at *2. And, mere weeks before that, the Federal Circuit held that claims "directed to a method for enabling a transaction between a user and a merchant, where the merchant is given a time-varying code instead of the user's secure (credit card) information" were directed to an abstract idea. *Universal Secure Registry*, 10 F.4th at 1349.

10

*Elbaum* and *Universal Secure Registry* are the latest in a long line of precedents holding that claims to methods of engaging in sales transactions are directed to a patent-ineligible abstract idea. *See Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 532 (Fed. Cir. 2021) (claims to a method for facilitating online transaction payments by holding payment in escrow); *Western Express*, 816 F. App'x at 486–87 (claims to a "money transfer method"); *Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, 955 F.3d 971, 976 (Fed. Cir. 2020) (claims to "methods for authorizing and clearing financial transactions to detect and prevent fraud"); *Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859, 863 (Fed. Cir. 2019) (claims to a method for securely making a purchase over the Internet with a credit card); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1371–72 (Fed. Cir. 2017) (claims to a method of paying for transit services with a bankcard); *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 982 (Fed. Cir. 2017) (claims to a method of payment verification).[2] Because claim 1 likewise covers a simple sales transaction, it is likewise directed to a patent-ineligible abstract idea.

The concept of providing a discount on a purchase is likewise a fundamental economic practice and therefore an abstract idea. *Elbaum*, for example, held that the concept of "providing

---

[2] *See also, e.g., NantWorks, LLC v. Niantic, Inc.*, 2021 WL 24850, at *6 (N.D. Cal. Jan. 4, 2021) ("Certainly, reconciling transactions between two users (for example, a customer buying something from a merchant) is a fundamental and longstanding economic practice, and an abstract idea."); *Curb Mobility, LLC v. Kaptyn, Inc.*, 434 F. Supp. 3d 854, 859 (D. Nev. 2020) (claims to a system for accepting credit cards in taxicabs were "directed to the abstract idea of paying for a taxicab with a credit card"); *Coding Techs., LLC v. Miss. Power Co.*, 2020 WL 8410430, at *3–4 (S.D. Miss. June 4, 2020) (claims to a method for using a barcode on a mobile device to pay a bill were directed to an abstract idea because "[b]illing transactions were common long before the advent of computer technology"); *Mankes v. Fandango, LLC*, 238 F. Supp. 3d 751, 757 (E.D.N.C. 2017) (claims to a reservation system for tracking and managing inventory while selling items both through the Internet and at a physical site were directed to an abstract idea); *Gammino v. AT&T Co.*, 127 F. Supp. 3d 264, 272 (D. Del. 2015) ("allowing a buyer to select a method of payment for a service" is a patent-ineligible abstract idea); *PricePlay.com, Inc. v. AOL Advertising, Inc.*, 83 F. Supp. 3d 577, 581 (D. Del. 2015) ("Like 'intermediated settlement' in *Alice* and 'risk hedging' in *Bilski*, a sales transaction is a 'fundamental economic practice long prevalent in our system of commerce.'").

. . . discount codes" is an abstract idea. 2021 WL 3923280, at *2. Similarly, in *Fast 101 PTY Ltd. v. CitiGroup Inc.*, 834 F. App'x 591 (Fed. Cir. 2020), the Federal Circuit held ineligible claims to a system that received and stored a customer order, determined a discount, paid the seller the discounted amount, and received customer payment at a later date. These claims, the court observed, were "directed to the abstract idea of an intermediated settlement system that employs a discount for early payment." *Id.* at 593; *see also Motivation Innovations, LLC v. Petsmart, Inc.*, 156 F. Supp. 3d 558, 568 (D. Del. 2016) (claims to "method and system for the use and redemption of 'discount offers' (or coupons)" were "directed to . . . the abstract idea of using coupons to provide discounts"); *NexusCard, Inc. v. Kroger Co.*, 173 F. Supp. 3d 462, 466 (E.D. Tex. 2016) (claims to a method for providing a "membership discount program" were directed to an abstract idea).

Indeed, the '852 patent itself confirms that providing discounts on purchases is a longstanding economic practice. In describing the claimed "stored value items," the patent notes that the items "function similarly to traditional paper coupons." '852 patent 5:4–7. Paper coupons date back to the nineteenth century—and coupon clippers date back almost as far.[3] The concept of providing a discount via a coupon is not a patent-eligible innovation. And adding a "mobile phone" and standard credit-card processing to the process does not change that fact.

At best, claim 1 is directed to combination of the abstract ideas of (i) processing a sales transaction and (ii) providing a discount using a coupon, voucher, or other kind of "stored value item." But "describing two abstract ideas in connection with each other . . . does not cause either abstract idea to then become a concrete thing." *NexusCard*, 173 F. Supp. 3d at 467; *see also*

---

[3] *See* B. Tuttle, *The History of Coupons*, Time (Apr. 6, 2010), *available at* https://business.time.com/2010/04/06/the-history-of-coupons/ (last visited Oct. 15, 2021); *cf. Affinity Labs*, 838 F.3d at 1270 (courts may take judicial notice of "fundamental economic concepts").

*FairWarning*, 839 F.3d at 1093–94 (claim directed to a "combination of . . . abstract-idea categories" is deemed abstract as a whole). Accordingly, claim 1 is directed to an abstract idea at *Alice* step one.

"[I]t is often helpful to ask" at step one "whether the claims are directed to 'an improvement in the functioning of a computer,'" instead whether they "merely 'add[] conventional computer components to well-known business practices.'" *Affinity Labs*, 838 F.3d at 1270 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016)). If the claims do not improve the functioning of a computer, they are more likely to be found abstract, because "[t]he 'mere automation of manual process using generic computers does not constitute a patentable improvement in computer technology.'" *RDPA*, 2021 WL 2440700, at *11 (quoting *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019)).

The claimed invention here does not improve computer functionality. The physical components present in the claims—"processors," "storage areas," "mobile devices," and "modules"—are entirely generic. The same goes for the components mentioned in the specification, which include, for example, a "server," a "processor[]," a "memory," and an "interconnect," '852 patent 13:16–32. *See Joao Bock Transaction Sys., LLC v. Fidelity Nat'l Info. Servs., Inc.*, 122 F. Supp. 3d 1322, 1335 (M.D. Fla. 2015) (memory device, communication device, receiver, transmitter, processing device, input device, display device, and date entry device were "ordinary components of any generic computer").[4] Moreover, the *functions* set forth in the claims involve nothing more than gathering data and transmitting it, which are "basic function[s]" of any computer and "not even arguably inventive." *OIP Techs., Inc. v.*

---

[4] Even if the specification did disclose inventive computer technology (it does not), that would be irrelevant to the eligibility question, because "[t]he focus of a Section 101 inquiry is on the asserted claims." *RDPA*, 2021 WL 2440700, at *9; *accord Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328–29 (Fed. Cir. 2020).

*Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (citations omitted); *accord buySAFE,*

*Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *RDPA*, 2021 WL 2440700, at *14

("Receiving transmitted data over a network merely implicates purely conventional activities that

are the most basic functions of a computer.") (quoting *Intellectual Ventures I LLC v. Erie Indem.*

*Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017)). Indeed, the '852 patent admits as much, noting, for

example, that the authentication methods required by the claims were "well known in the art" at

the time of the invention. '852 patent 14:45–47.

*     *     *

In sum, claim 1 of the '852 patent describes the abstract concept of processing a

discounted sales transaction, and it implements that concept using generic computer

functionality. Claim 1 is therefore directed to an abstract idea.

II.     ***Alice* Step Two: Claim 1 does not contain an inventive concept, considered individually or as an ordered combination, because it simply implements the abstract idea using generic computer components and techniques.**

Claims that merely recite the use of general-purpose computers to carry out an abstract

idea do not contain an inventive concept**.** *See Alice*, 573 U.S. at 212, 222–23; *Universal Secure*

*Registry*, 10 F.4th at 1350. But, as explained above, that is all claim 1 does. The claimed

invention uses generic, functionally defined computer components (such as "processors,"

"storage areas," "mobile devices," and "modules") and generic computer techniques (such as

transmitting and receiving information) to automate the conventional business practice of

processing a discounted payment in a sales transaction. That is not enough to supply an inventive

concept: "merely storing, transmitting, retrieving, and writing data to implement an abstract idea

on a computer does not transform the claim into a patent-eligible application." *Smartflash*, 680 F.

App'x at 983; *see also id.* at 984 (finding that "interfaces," "program stores," and "processors"

were generic computer components); *Elbaum*, 2021 WL 3923280, at *2 ("claim elements

14

recite[d] purely conventional computer functions of storing, receiving, analyzing, and processing data" and therefore did not contain an inventive concept); *Smart Sys.*, 873 F.3d at 1374 ("processor," "interface," "memory," "data," "hash identifier" were generic computer components that did not add an inventive concept at step two).

Claim 1's functional nature provides an additional indication that the method here is not inventive. *See Affinity Labs*, 838 F.3d at 1269. The claim recites "objectives," not "mechanisms." *Kroy*, 107 F. Supp. 3d at 704. A transaction is processed; an authorization request is received; a stored value item is applied; indications are sent and received—but the claim is silent on the mechanisms that actually perform these functions. That is further evidence that the claimed invention does not improve computers but instead simply uses existing technology as a tool to automate an old business practice. *See cxLoyalty*, 986 F.3d at 1378 (finding no inventive concept because claims were phrased functionally and "provide[d] no useful guidance as to how th[e] purported function is achieved"); *NexusCard*, 173 F. Supp. 3d at 468 (similar).

The specification suggests that the patented method is more convenient for customers because it allows them to manage multiple payment instruments and discount sources through a single intermediary. *See, e.g.*, '852 patent 1:62–2:3. But that is irrelevant to the § 101 inquiry. Even if the claims make this conventional business practice more efficient, they do not improve the computer itself, so they remain ineligible. *See Simio*, 983 F.3d at 1361 (rejecting as unpatentable claims that improved the "experience of a user" but did not improve "the *computer's* functionality"); *OIP*, 788 F.3d at 1363 ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) (finding unpatentable claims "directed to price determination" because they "merely use[d] a computer to improve the

performance of that determination—not the performance of a computer").

During prosecution, the patentee argued in response to an obviousness rejection that the claimed invention improved upon the prior art because it was able to "consolidate stored value items from multiple sources (e.g., merchants, manufacturers, or other consumers) into a single account." Reply to OA of Apr. 19, 2012 at 11–12 (attached as Ex. G). The Examiner credited this argument, stating that the purported invention had the "advantage" of "allow[ing] the customer to apply stored value from multiple sources"—"e.g., merchants, manufacturers, or other consumers"—"to a single transaction." June 5, 2014 Notice of Allowance at 7.

But even assuming (for the sake of argument) that the aggregation of stored value items from multiple data sources was *novel*, that concept is still an abstract idea. "The mere combination of data sources" cannot make an otherwise ineligible claim eligible. *FairWarning*, 839 F.3d at 1097. Indeed, the Federal Circuit has consistently held that claims that required "collecting data from multiple data sources [and] analyzing the data" were directed to patent-ineligible abstract ideas. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016); *see also RDPA*, 2021 WL 2440700, at *14 (discussing *Electric Power Group*).

*cxLoyalty* is also instructive in this regard. That case addressed claims to a system that allowed loyalty-program participants to use points as currency with different third-party vendors. *See* 986 F.3d at 1371–72. The patentee argued that the claims contained an inventive concept because they allowed participants to use a single interface to "make points-based purchases directly from multiple third-party vendor systems." *Id.* at 1380. The Federal Circuit disagreed, explaining that "this additional limitation constitutes part of the abstract idea: loyalty programs had long permitted participants to make points-based purchases from multiple third-party vendors." *Id.*

A similar conclusion is appropriate here. As anyone who has ever clipped coupons can attest, customers have long been able to aggregate discounts on a given purchase from multiple sources (e.g., local newspapers, weekly circulars, loyalty-discount programs, punch cards, etc.). And, even crediting the patentee's contention that this aspect of the claims "recite[s] novel subject matter, that fact is insufficient to confer eligibility." *Id.* at 1381. Aggregating stored value items from multiple sources does not save the claims from abstractness.

This conclusion is further strengthened in light of the fact that this allegedly inventive computerized process has a clear manual analogue. Consider the following hypothetical: A customer enters a sandwich shop, provides her Customer Rewards number, and orders a sandwich. The cashier checks to see if the store has any available discounts and notifies the customer that there is currently a promotion under which Customer Rewards members receive one dollar off their sandwiches. The customer then searches her wallet and finds a fully filled-out punch-card that entitles her to a free sub. The customer also finds a paper coupon she received in the mail that entitles her to $2 off any purchase between 2 PM and 4 PM—and, luckily for Customer, it is 3 PM. The customer then tells the cashier which among these potential discounts she would like to use. The cashier calculates the discounted price and the customer pays.

This familiar sort of business transaction is, at bottom, what the inventors have sought to claim as patentable here. The only differences are that, in the claims, the transaction is processed electronically (e.g. with a credit card) through various third parties (an intermediary, an acquirer, and an issuing institution) and the customer indicates which discounts she would like to apply using her phone instead of her voice. That demonstrates that the patents are directed to an ineligible abstract idea. *See Joao Bock Transaction Sys. LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513, 522 (D. Del. 2014) (finding claims ineligible based on hypothetical demonstrating

that the claimed method was directed to "a conventional business practice utilized by bankers or financial institutions in their dealings with individual account holders without the use of computers").

### III.   The remaining claims are ineligible for patenting for the same reasons as claim 1.

The above analysis focuses on representative claim 1, but the same conclusion holds for the remaining claims. *See Smart Sys.*, 873 F.3d at 1368 n.7 (approving district court's decision to treat a single claim as representative where the patentee could "not identify a meaningful difference between the claims"). Independent claims 15 and 28 cover systems and media, respectively, that are "configured to" perform the method of claim 1. Thus, as in *Alice*, "the system [and media] claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system [and media] claims recite a handful of generic computer components configured to implement the same idea." 573 U.S. at 226. Claims 15 and 28 are thus ineligible for the same reasons as claim 1. *See id.*; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011).[5]

The various dependent claims simply recite additional layers of abstraction:

- Claims 2, 16, and 29 recite that the stored value item is a "coupon";

- Claims 3, 17, and 30 recite that the stored value is "expressed as a currency amount";

- Claim 4 recites that the stored value is expressed as a percentage of the transaction amount;

- Claims 5, 6, 18, 19, 31, and 32 recite that the stored value is "expressed in non-currency units" that must be converted to currency units and may be converted "based on the characteristics of the transaction";

- Claims 7, 20, and 33 recite that the stored value item is determined based on the identity of the product purchased during the transaction;

---

[5] Claim 28 and its dependent claims are also patent-eligible for an additional, independent reason, discussed *infra* Section V.

- Claims 8, 21, and 34 recite that the stored value item is determined based on the time of the transaction;

- Claims 9, 22, and 35 recite that the stored value item is determined based on the customer's transaction history;

- Claims 10, 23, and 36 recite that the payment process includes a "modified authorization request" that is based on the "modified [i.e., post-discount] transaction amount";

- Claims 11, 24, and 37 recite that the stored value item is associated with the customer's unique identifier; and

- Claims 12, 13, 14, 25, 26, 27, 38, 39, and 40 recite that a stored value item is retrieved from among a "plurality of stored value items" based on particular "transaction conditions," which may include the product identity or time period of purchase.

These additional limitations "may make th[e] claims narrower, [but] they don't make them any less abstract." *Kroy*, 107 F. Supp. 3d at 691; *see FairWarning*, 839 F.3d at 1093–94 (a claim directed to a "combination of . . . abstract-idea categories" is deemed abstract as a whole).

Accordingly, all the claims of the '852 patent are ineligible for patenting for the same reasons as claim 1. *See RDPA*, 2021 WL 2440700, at *11 ("Because the five Asserted Patents are substantially similar, one can serve for all five of them.").

## IV.   The claims are closely analogous to those found ineligible for patenting in prior Federal Circuit cases.

In addressing patent eligibility, courts often reason by analogy, asking whether the claims are similar to "claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. This mode of analysis confirms that the '852 patent claims are ineligible.

*Alice* itself provides a ready analogue. The patent at issue there claimed a method of exchanging financial obligations between two parties through an intermediary that created "shadow" credit and debit records in order to mitigate settlement risk—"i.e., the risk that only one party to an agreed-upon financial exchange will satisfy its obligation." 573 U.S. at 213 &

19

n.2, 219. The Supreme Court held that the claims were "drawn to the concept of intermediated settlement," which was an abstract idea—a "fundamental economic practice long prevalent in our system of commerce." *Id.* at 219. And the claims contained no inventive concept because they merely "instruct[ed] the practitioner to implement the abstract idea of intermediated settlement on a generic computer." *Id.* at 225.

The same logic shows that the '852 patent is directed to an abstract idea—nothing more. The claims cover the fundamental economic practice of processing a discounted transaction using an intermediary between acquirers and financial institutions. And they lack an inventive concept because the implementation is conventional and generic.

*cxLoyalty* likewise demonstrates that the '852 patent claims are ineligible for patenting. The patent there claimed a computerized method for allowing loyalty-program participants to use loyalty-program points as currency with third-party vendors. More specifically, the claims were directed to "facilitating, or brokering, a commercial transaction (i.e., the sale and purchase of goods and services) between a purchaser using a first form of value (i.e., [rewards points]) and a seller transacting in a second form of value (i.e., . . . currency)." 986 F.3d at 1376–77. The Federal Circuit found the claims abstract at *Alice* step one because they were directed to a "long standing commercial practice." *Id.* at 1377. As the court observed, "[h]umans have long intermediated these very transactions by collecting and relaying the very same information." *Id.* And the claims "also fail[ed] at step two" because they simply applied the abstract idea using "well-understood, routine, and conventional . . . . computer components (i.e., 'processors,' 'GUI,' and 'API') and functionality." *Id.* They were "not directed to a technological solution to a technological problem." *Id.* at 1378.

A similar conclusion is appropriate here. Humans have been buying and selling products

for hundreds, if not thousands, of years, and they have been applying discounts to such transactions via coupons and the like since at least the 1800s. The '852 patent simply implements these longstanding commercial practices using "well-understood, routine, and conventional . . . . computer components." *Id.* at 1377.

*Inventor Holdings* is also instructive. There the Federal Circuit addressed claims to a method of purchasing goods at a local point-of-sale system from a remote seller "by placing an order, receiving an order code, entering the order code at a POS terminal, and paying for the order in person." 876 F.3d at 1375. The district court found the claims ineligible for patenting and then awarded exceptional-case attorneys' fees on the basis that, after *Alice*, the patentee's arguments for eligibility were "objectively without merit." *Id.* at 1377. The Federal Circuit affirmed. "The idea that a customer may pay for items ordered from a remote seller at a third-party's local establishment," the court explained, "is the type of fundamental business practice that, when implemented using generic computer technology, is not patent-eligible under *Alice*." *Id.* at 1378. And the district court's exceptional-case finding was appropriate because the claims were not "anywhere near[] the margins of patent-eligibility." *Id.* at 1379.

The lesson from *Inventor Holdings* is clear: after *Alice*, "claims that involve implementations of economic arrangements using generic computer technology" are categorically ineligible under § 101. *Id.* That principle is fatal to the claims here for the reasons explained above. The '852 patent, like the patent in *Inventor Holdings*, is far beyond the margins of patent eligibility.[6]

Finally, in *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528 (Fed. Cir. 2021), the claims at issue covered a computer system for facilitating online transaction payments by

---

[6] Square reserves its rights to seek attorneys' fees under 35 U.S.C. § 285 at the appropriate time.

holding payment in escrow and completing it after confirmation that the transaction had been consummated. The Federal Circuit held that these claims failed *Alice* step one because they were "directed to the abstract idea of payment escrow." *Id.* at 532. While the claims also involved the use of an identification code to verify the transaction, that feature "at most . . . overlay a second layer of abstraction—specifically, identity authentication—on the escrow procedure described by the claims." *Id.* And the claims failed *Alice* step two because the alleged inventive concepts— "the order and timing of the claim elements"—were "merely the necessary steps" of executing the abstract idea of payment escrow. *Id.* at 533.

Again, a similar result should obtain here. At their core, the '852 patent claims are directed to the abstract idea of a discounted sales transaction. And the additional limitations of the independent and dependent claims just add additional layers of abstraction, such as by specifying the form in which the discount is expressed. Finally, as in *Boom! Payments*, the specific ordering of the claimed steps cannot supply an inventive concept because those elements are "merely the necessary steps" executing the claimed abstract ideas. *Id.*

## V.   Claims 28–40 are patent-ineligible as a matter of law because they encompass transitory computer-readable media.

Independent claim 28 covers a "computer-readable medium containing instructions for processing financial transaction data" according to the method described in the patent. Claim 28 and its dependent claims—in addition to failing the *Alice* test for patent eligibility, as explained above—are unpatentable under § 101 for a second, independent reason: they are *per se* directed to non-statutory subject matter.

Section 101 limits patentable inventions to "process[es]," "machine[s]," "manufacture[s]," or "composition[s] of matter." 35 U.S.C. § 101. "The four categories together describe the exclusive reach of patentable subject matter." *Nuitjen*, 500 F.3d at 1354. "If a claim

covers material not found in any of the four statutory categories, that claim falls outside the plainly expressed scope of § 101 . . . ." *Id.* In *Nuitjen*, the Federal Circuit held that a "transitory, propagating signal" does not fall within any of the statutory categories and therefore is not patentable subject matter. *Id.* at 1357. And, if a claim is broad enough to reach non-statutory subject matter, the claim is ineligible as a whole. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1294–95 (Fed. Cir. 2017).

Claims to computer readable media are *per se* ineligible for patenting unless the patent specifically disclaims non-transitory media. *Id.* at 13; *see Carl Zeiss*, 2018 WL 1846336, at *3 (noting that, absent patentee disclaimer, the "plain meaning" of "computer readable medium" encompasses unpatentable transitory media); U.S. Patent & Trademark Office, *Subject Matter Eligibility of Computer Readable Media* (Jan. 26, 2010) (similar). This is because the "ordinary and customary meaning" of "computer readable medium" is "broad enough to encompass both non-transitory and transitory media." *Ex parte Mewherter*, No. 2012-007692, Decision on Appeal at 6–14 (P.T.A.B. May 8, 2013).

The '852 patent does not disclaim transitory media from the scope of claim 28. In fact, the specification places no limits at all on the scope of "computer readable medium," instead simply providing *examples* of what the term encompasses. *See* '852 patent 14:4–7. Accordingly, claim 28 and its dependents are broad enough to cover transitory signals and are *per se* ineligible for patenting. *See Mentor Graphics*, 851 F.3d at 1294–95; *Carl Zeiss*, 2018 WL 1846336, at *3; *Mewherter*, No. 2012-007692, Decision on Appeal at 6.

## CONCLUSION

Square respectfully requests that the Court grant the motion and dismiss the complaint with prejudice.

Dated: October 15, 2021

Respectfully submitted,

 /s/ *Daniel S. Block*

Daniel S. Block
Chandrika Vira
William H. Milliken
Sterne, Kessler, Goldstein & Fox, P.L.L.C.
1100 New York Avenue, N.W.
Washington, DC 20005
(202) 371-2600
dblock@sternekessler.com
cvira@sternekessler.com
wmilliken@sternekessler.com

*Counsel for Defendant Square, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on October 15, 2021.

 /s/ *Daniel S. Block*
Daniel S. Block

17310188.10