**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

AUTHWALLET, LLC,                      )
      **Plaintiff,**                      )
                            )      **Civil Action No. 1:21-cv-005463**
**v.**                      )
                            )
**SQUARE, INC.**                      )
      **Defendant.**                      )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

i

# TABLE OF CONTENTS

I.     RELEVANT FACTUAL BACKGROUND AND INTRODUCTION ..........................1

II.    STANDARD FOR PATENTABLE SUBJECT MATTER ...................................2

III.   THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART
       ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT
       MATTER .....................................................................................................4

       A.  The Claims of the '852 Patent Are Directed to Concrete Steps..............................4

       B.  Defendant Oversimplifies the Claimed Invention and Ignores Important
           Limitations ...........................................................................................10

       C.  Defendant's Caselaw is Not Applicable as the Claims at Issue are Very Different
           ................................................................................................................12

       D.  Defendant's Claim Chart Ignores the Focus of the Claims of the
           '852 Patent ...........................................................................................13

IV.    THERE ARE INVENTIVE ASPECTS OF THE '852 PATENT THAT PRECLUDE
       DISMISSAL AT THIS STAGE .........................................................................15

       A.  Factual Allegations in the Complaint and Patent Specification Preclude
           Summary Judgment.................................................................................16

       B.  The Claims of the '852 Patent Overcome a Specific Problem in online sales ......17

V.     THERE ARE INVENTIVE ASPECTS OF THE '852 PATENT THAT PRECLUDE
       DISMISSAL AT THIS STAGE .........................................................................15

       A.  Factual Allegations in the Amended Complaint and Patent Specification
           Preclude Summary Judgment ................................................................16

       B.  The Claims of the '852 Patent Overcome a Specific Problem in
           E-commerce ...........................................................................................17

VI.    CONCLUSION AND PRAYER .........................................................................18

ii

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018).................... 18

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) ............................... 3

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347 (2014) ......................... 3, 4, 5

*Ariosa Diagnostics*, 788 F.3d at 1376.............................................................................................. 6

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).......... 4

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)................................................................ 4, 18

*Boom! Payments, Inc. v. Stripe, Inc.*, 2021 WL 3923280 (Fed. Cir. Sept. 2, 2021)......................... 13

*Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, 955 F.3d 971 (Fed. Cir. 2020) ....................... 15

*BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ............................................... 16

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019)...................................... 6, 17

*Coding Techs., LLC v. Miss. Power Co.*, 434 F. Supp. 3d 854 (D. Nev. 2020) ................................ 13

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) ....................... 3

*Curb Mobility, LLC v. Kaptyn, Inc.,* 2021 WL 24850 (N.D. Cal. Jan.4, 2021)................................. 13

cxLoyalty, Inc. v. Martiz Holdings, Inc. 986 F.3d 1367 (Fed. Cir. 2021).................................... 12, 13

*DDR Holdings, LLC*, 773 F.3d at 1259 ........................................................................................... 19

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 .................................................................................... 15

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)..................................................... 10

*Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059 (D. Nev. 2018)................................. 5

*Fast 101 PTY Ltd v. CitiGroup Inc., 834 F. App'x 591 (Fed. Cir. 2020)*........................................ 14

*Gammino v. AT&T Co.*, 127 F. Supp. 3d 264 (D. Del. 2015) ......................................................... 14

*Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177 (5th Cir. 2007)....................................................... 17

*In re Elbaum,* 2021 WL 2440700 ................................................................................................... 13

*In re TLI Commc'ns*, 823 F.3d at 612 ............................................................................................... 6

*Innovation Sciences, LLC v. Amazon.com, Inc.,* 778 F. App'x 859 (Fed. Cir. 2019)........................ 15

*Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ............................... 3

*Mankes v. Fandango, LLC*., 238 F.Supp.3d 751 (E.D.N.C. 2017).................................................... 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289 (2012)............. 3

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016)............................ 3, 4

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ........................................................ 17

*Motivation Innovations, LLC v. Petsmart, Inc.*, 156 F. Supp. 3d 558 (D. Del. 2016) ...................... 14

*NexusCard, Inc. v. Kroger Co.*, 173 F. Supp. 3d 462 (E.D.Tex. 2016) .................................... 14

*PricePlay.com, Inc. v. AOL Advertising, Inc.,* 83 F. Supp. 3d 577 (D. Del. 2015) ......................... 14

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042 (Fed. Cir. 2016) ............................ 3

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 816 F. App'x at 486 ............................... 13

*Smartflash LLC v. Apple Inc.,* 2016-1059 (Fed. Cir. Mar. 1, 2017) ...................................... 16

*Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019) ................................... 5

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Authwallet, LLC ("Authwallet") files this Response to Defendant Square, Inc.'s ("Square") Motion to Dismiss[1] ("Defendant's Motion") showing the Court that it should be denied.

## I.    RELEVANT FACTUAL BACKGROUND AND INTRODUCTION

On March 22, 2016, U.S. Patent No. 9,292,852 entitled "System And Method For Applying Stored Value Item To A Financial Transaction" was duly and legally issued by the U.S. Patent and Trademark Office.  Authwallet, LLC owns the '852 patent by assignment.  The '852 patent relates to a novel and improved methods and apparatuses for securing financial transactions and includes the ability to utilize multiple payment methods, including stored value items such as gift cards, or discounts from multiple merchants.[2] The priority date for each claim is November 8, 2008.[3]

Embodiments of the claimed invention provide numerous benefits over the prior art, including, but not limited to, providing a secured transaction that avails the users of lower cost transactions due to additional security, while adding convenience through multiple payment methods with single point access and customer perks from multiple individual merchants.[4] The patent specification provides that such transactions were not possible prior to the claimed invention, requiring users who shopped online to pay higher fees than brick and mortar businesses due to the physical presence of the credit or debit card and the greater security provided by the physical presence of the credit or debit card.[5] Further, embodiments of the invention allow the purchaser to access multiple payment methods and discounts from multiple merchants at approximately the same time as the financial transaction is verified, using an intermediary service.[6]

---

[1] Doc. No. 18.
[2] Doc. No. 1-1, U.S. Patent No. 9,292,852 ("the '852 patent") at Abstract, Column 2, line 47 – col 4, line 2, Column 4 line 38 – Column 5, line 3
[3] Doc. No. 1-1 at page 1.
[4] *See id.* at 2:47-4:2; 4:38-5:3.
[5] *See id.* at 1:32-45.
[6] *See id.* at 11:29-12:41.

Claim 1 is representative and provides:

1. A computer-implemented method for processing financial transaction data in a computing system including a processor and a storage area, the method comprising:

receiving an authorization request generated as a result of a transaction by a purchaser at a point of purchase via an acquirer configured to receive authorization requests from a plurality of points of purchase, wherein the authorization request includes a purchaser identifier and transaction information, the transaction information including a transaction amount, and wherein the purchaser identifier identifies the purchaser that initiated the transaction;

based on the authorization request, determining one or more stored value items to apply to the transaction,
      wherein each stored value item includes an associated value,
      wherein the one or more stored value items are selected from a plurality of stored value items stored in the storage area, and
      wherein the plurality of stored value items includes stored value items provided by a plurality of different third parties;

transmitting a transaction indication message to a mobile device associated with the purchaser identifier, wherein the transaction indication message includes information about the determined one or more stored value items;

receiving an indication from a user of the mobile device that at least one stored value item should be applied against the transaction;

applying the indicated at least one stored value item to pay a first portion of the transaction amount; and

initiating a payment process to pay a remaining portion of the transaction amount by providing a modified transaction amount to the acquirer for submission to a payment association.[7]

The remaining independent claims 15 and 28 as well as the dependent claims[8] add further

material important to patentability.[9]

## II.        STANDARD FOR PATENTABLE SUBJECT MATTER

---

[7] Doc. No. 1-1 at 32:46 - 33:13.
[8] And the remaining independent and dependent claims.
[9] *See* Doc. No. 1-1 at 33:14-36:54 (Claims 2-40).

The Supreme Court articulated a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."[10]   At step one, the court must determine whether the claims are directed to one of the three patent-ineligible concepts.[11]   If not, "the claims satisfy [Section] 101 and [the court] need not proceed to the second step."[12]   If the claims are directed to a patent-ineligible concept, the court must proceed to the second step of identifying an "inventive concept i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."[13]

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."[14]   However, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims."[15]

At step two, the court must "look to both the claim as a whole and the individual claim elements" to determine whether they "amount[ ] to significantly more than a patent upon the ineligible concept itself"[16]   "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept."[17]   Instead, the claim elements must

---

[10] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S. Ct. 2347 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78, 132 S. Ct. 1289 (2012).

[11] *Alice*, 573 U.S. at 217.

[12] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).

[13] *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

[14] *Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*DIRECTV*") ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").

[15] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (internal quotation marks omitted). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

[16] *McRO*, 837 F.3d at 1312.

[17] *Alice*, 573 U.S. at 222

involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry."[18] "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."[19]

Applying these standards, the claims of the '852 patent are patent eligible.

## III. THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT MATTER

The Claims of the '852 patent are directed to providing increased fraud security for financial transactions when a physical device, the credit, debit, or gift card, cannot be presented to the merchant by the purchaser by providing out-of-band confirmation, where the out-of-band confirmation is a secondary source of identifying information provided by an intermediary service.[20] The '852 patent's specification teaches the claimed solution secured transactions was not available prior to the invention of the claims of the '852 patent.[21] Further, there is no record evidence of the claimed solution existing prior to the invention of the claims of the '852 patent and thus there is no record evidence that the claimed improvement for e-commerce systems are conventional.

### A. The Claims of the '852 Patent Are Directed to Concrete Steps

To properly evaluate whether asserted claims "are directed to a patent-eligible concept,"[22] a court must examine "the focus of the claimed advance over the prior art to determine if the

---

[18] *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73.
[19] *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).
[20] Doc. No. 1-1 at 2: 47-63.
[21] *See id.* at 1:47-61.
[22] *Alice Corp. Pty. Ltd.*, 573 U.S. at 218.

character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter."[23]  In other words, abstractness is determined by analyzing the claim as a whole, not whether each element standing alone is abstract.[24]  Taking the claim as a whole, the focus of the claims is "providing increased fraud security for financial transactions when a physical device cannot be presented to the merchant by the purchaser by providing out-of-band confirmation. Where the out-of-band confirmation is a secondary source of identifying information provided by an intermediary service"[25] ("Focus").

       This Focus is supported by the Specification:

> Rather than send the initial authorization request directly to the payment association 112, the acquirer 108 in step 3 sends at least part of the data from the initial authorization request to the intermediary service 204. The acquirer is able to route the initial authorization request to the intermediary service 204 because the identifying information transmitted in the authorization request identifies the initial authorization request as being associated with a customer 102 having an account with the intermediary service 204. After receiving the data from the initial authorization request from the acquirer 108, as will be discussed in additional detail herein, the intermediary service 204 authenticates the request to ensure that the request has been issued from a valid acquirer and the transaction is valid. Among other steps, the intermediary service 204 also [26]

---

[23] *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019).
[24] *See e.g., Alice Corp.*, 574 U.S. 208, 219, 134 S. Ct. 2347, 2359 (2014); *Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059, 1067 (D. Nev. 2018).
[25] Doc. No. 1-1 at Doc. No. 1-1 at 2:47-63.
[26] Doc. No. 1-1 at Doc. No. 1-1 at 8:30-43.

> notification messages in FIGS. 3B-3D), the customer **102** uses the mobile device **206** to send a confirmation message. Such a confirmation message is sent in a step **4***b*, and may confirm the transaction or deny the transaction in the transaction notification message. If the customer denies the transaction, the intermediary service ends further processing of the first authorization request and notifies the acquirer **108** that the request has been denied. The acquirer, in turn, notifies the merchant who then cancels the transaction. [27]

Assessing the focus of the claims from the Specification is proper.  The inquiry may also involve looking to the abstract to understand the problem facing the inventor and, ultimately, what the patent describes as the invention.[28]

Further support for this Focus is provided in the independent claims:

For Claim 1:

> A computer-implemented method for processing financial transaction data in a computing system including a processor and a storage area, the method comprising:
>
> receiving an authorization request generated as a result of a transaction by a purchaser at a point of purchase via an acquirer configured to receive authorization requests from a plurality of points of purchase, wherein *the authorization request includes a purchaser identifier and transaction information*,[29] the transaction information including a transaction amount, and wherein the purchaser identifier identifies the purchaser that initiated the transaction;
>
> based on the authorization request, determining one or more stored value items to apply to the transaction,
> > wherein each stored value item includes an associated value,
> > wherein the one or more stored value items are selected from a plurality of stored value items stored in the storage area, and
> > wherein the plurality of stored value items includes stored value items provided by a plurality of different third parties;

---

[27] Doc. No. 1-1 at Doc. No. 1-1 at 11:5-13.

[28] *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) *citing TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015) (in the step one analysis, pointing to statements from the specification that supported the identified focus was the key discovery described in the patent).

[29] Doc. No. 1-1 at 8:55-56.

*transmitting a transaction indication message to a mobile device associated with the purchaser identifier*,[30] wherein the transaction indication message includes information about the determined one or more stored value items;

*receiving an indication from a user of the mobile device that at least one stored value item should be applied against the transaction*;[31]

applying the indicated at least one stored value item to pay a first portion of the transaction amount; and

initiating a payment process to pay a remaining portion of the transaction amount by providing a modified transaction amount to the acquirer for submission to a payment association.[32]

Claim 1 above is representative in that it indicates a transaction is initiated, an authorization request is sent to an intermediary service, the intermediary service initiates a two-step authorization process, sends a message regarding the transaction to a mobile device, and the purchaser verifies the transaction by selecting a payment instrument, in this case a stored value item.[33]

The specification of the '852 patent provides further support for the Focus in the Background of

Invention where it specifies that

> . . . participants in the system pay lower fees when more customer information is provided with the transaction information. Fees are lower because the additional customer information can generally be retrieved only from the physical card itself, indicating that the card was present at the time of the transaction. Thus, a purchase at a brick-and-mortar business is charged a lower processing fee than a purchase on the Internet, because the brick-and-mortar business is able to transmit more customer information to the credit card company.[34]

> To obtain identifying information contained on a tendered card and initiate the transaction process, the customer **102** or the merchant **106** may swipe the card **104** through a card reader and, if required, enter a PIN or code. Alternatively, for a purchase made via a website, phone, or other network-accessible service, the customer **102** may provide a card number, associated name, and/or other identifying information to the merchant. The identifying information that is obtained from the card depends on the type of transaction and the available systems for reading the card. Standard credit and debit cards include several sets of information referred to as Track **1** and Track **2**. The data on Track **1** is considered public, while the data on Track **2** is considered private and must be transmitted using special security

---

[30] Doc. No. 1-1 at 8:56-59.
[31] Doc. No. 1-1 at 9:7-13.
[32] Doc. No. 1-1 at 32:46 - 33:13.
[33] Doc. No. 1-1 at 8:55-59; 9:7-13.
[34] Doc. No. 1-1 at 1:35-45.

protections dictated by the issuing bank or the payment association (e.g., Visa, MasterCard, etc.). However, transaction fees are lower if data from Track **2** is also provided. Because of the security restrictions and the lack of a reader that can read the tracks, data from Track **2** is generally not available for online, mail order, or telephone transactions (generally referred to as "card not present transactions"). [35]

The specification describes the prior art as brick-and-mortar vendors as well as online vendors. The brick-and-mortar vendors typically have access to a purchaser's physical credit or debit card. The brick-and-mortar vendor is then able to scan the card for information that is not readily accessible, Track 2 information. The online vendor is limited to information that is provided to a purchaser who is simply able to view the information printed or embossed on the surface of the credit or debit card such as account number, name on the card, validity date, or other printed information, Track 1 information. Track 2 information is considered more secure than Track 1 information and due to increased possibility of fraud, fees for using a credit or debit card with only Track 1 security were higher.[36]  Track 2 information is embedded into the credit, debit, or gift card, such as a magnetic strip or chip, but is not accessible by simply viewing the card and is therefore considered more secure. As such, the focus is limited to on-line (or e-commerce) and does not relate in any manner to a traditional, 'brick and mortar in-person' transaction.  The problem is specific to e-commerce, namely allowing a user to purchase from a vendor of their choice without requiring the presence of a physical credit or debit while taking advantage of lower fees typically associated with the physical presence of a credit card, a Track 2 purchase.[37]

The '852 patent specification provides substantial detail for the claimed invention and its interconnectivity with each claimed element for sufficient specificity to be concrete.[38]  For instance, the '852 patent provides reference to systems and methods through the detailed

---

[35] Doc. No. 1-1 at 7:18-29.
[36] *See id.* at 7:18-29.
[37] *See id.* at 3:6-4:2.
[38] *See, e.g., SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

flowcharts that can be used to perform the e-commerce solutions of the claimed inventions;[39] Figures 2A-C use block diagrams to illustrate an environment where an intermediary service operates to authorize and facilitate a particular transaction typically by contacting the authorizing person related to the card on a mobile device.[40] Figures 3A-D are representative of transaction notifications that may appear to a purchaser in order to confirm a transaction.[41]  Figure 5 illustrates a logical block diagram on an intermediary service.[42] Figures 6A-B is a block diagram of an intermediary service processing a financial transaction.[43] Figure 6C is a block diagram defining a rule for an intermediary service.[44] Figure 6D is a block diagram of the intermediary service processing the rules.[45] Figure 6E is a block diagram of the intermediary service processing a stored value.[46] Figure 7 is a block diagram of an acquirer processing a financial transaction.[47] Figure 8 is a block diagram of an acquirer implementing the process of Figure 7.[48] Figure 9 is a block diagram of message routing paths through the intermediary service.[49] Figure 10A is a block diagram of a process to control account status through the intermediary service.[50] Figure 10B is a block diagram of a process for the intermediary service to handle an authorization request from an issuing institution.[51]

In short, there is ample disclosure of how to implement embodiments of the claimed invention.

---

[39] Doc. No. 1-1 at 7:57-13:15; 13:54-32:34.
[40] *See id.* at 7:57-9:38.
[41] *See id.* at 9:39-13:15.
[42] *See id.* at 13:55-21:5.
[43] *See id.* at 21:5-23:67.
[44] *See id.* at 24:1-21:45.
[45] *See id.* at 21:45-25:35.
[46] *See id.* at 28:1-29:23.
[47] *See id.* at 29:24-30:64.
[48] *See id.* at 30:65-31:56.
[49] *See id.* at 31:57-31:56.
[50] *See id.* At 25:36-27:41.
[51] *See id.* at 27:41-27:67.

**B.  Defendant Oversimplifies the Claimed Invention and Ignores Important Limitations.**

Defendant's Motion is an oversimplification and focuses on claim elements rather than the claim as a whole.  Defendant "describe[s] the claims at such a high level of abstraction and untethered from the language of the claims that all but ensures that the exceptions to §101 swallow the rule."[52]  For instance, Defendant's Motion opens its argument over generalizing the teachings of the patent by providing that "The '852 patent discloses and claims a "transaction processing service" that allows a customer to use her mobile device to apply discounts, or "stored value items," to a purchase made at a point of sale"[53]

Defendant's description of Plaintiff's claimed invention fails to even mention a heightened security element even though heightened security for financial transactions is discussed as being within the scope and focus of the invention.

The Defendant's Motion further characterizes the claims as "Processing a discounted payment in a sales transaction"[54]  The Defendant's Motion again oversimplifies the specification while focusing on rabbit trails.  In particular the Defendant's Motion transitions to computer components and various modules, stating "the patent nowhere suggests that the patentee invented any of the computer components and techniques mentioned in the specification or utilized in the various modules."[55]

However, Plaintiff notes, this is not a case where a computer is an added element to automate what was done manually before, rather Plaintiff's claimed invention is directed at a solution to a problem unique to e-commerce, securing an online transaction while the purchaser is

---

[52] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).
[53] Defendant's Motion at 3.
[54] Defendant's Motion at 5.
[55] Defendant's Motion at 5.

conducting the transaction and includes a means of requesting authorization from the customer separate from the particular online transaction being authorized, as specified in the specification.[56]

Finally, Defendant's Motion attempts to make a case that the '852 was not examined with respect to the Supreme Court's decision in *Alice*, due to the timing of the '852 being allowed and issued.[57]   However, immediately after the Supreme Court's decision in *Alice*, on July 25, 2014 the application was withdrawn from allowance, with the withdrawal notice noting "the reasons therefore will be communicated to you by the examiner."[58]   On September 3, 2014 the Examiner provided a Non-Final rejection, noting specifically that the withdrawal was "Based upon the recent Supreme Court decision *Alice Corporation Pty. Ltd. v. CLS Bank International, et al.*, prosecution is hereby REOPENED"[59]   Subsequently, the patent issued after the examiner considered *Alice*.

Further, Defendant's citation to *Alice* is merely a grab at a quote.

**C.  Defendant's Caselaw is Not Applicable as the Claims at Issue are Very Different**

Defendant begins its argument by again, oversimplifying the claim and then simply passing over the inventive aspects of the cited claim. Defendant glosses over the meaning of the claim limitations "transmitting a transaction indication message to a mobile device"[60] and "receiving an indication from a user of the mobile device"[61] Keeping in mind that the '852 patent tells us that, the inventive two step authorization process performed by the intermediary service begins when the intermediary service "transmits a transaction notification message to a mobile device"[62] and is completed when the customer provides "information to continue the transaction, such as to provide

---

[56] Doc. No. 1-1 at 2:10-32:44.
[57] Defendant's Motion at 6-7.
[58] July 25, 2014 Notice of Withdrawal, Exhibit A.
[59] November 3, 2014 Non-Final Rejection, Exhibit B.
[60] Doc. No. 1-1 at 33:1-2.
[61] Doc. No. 1-1 at 33:5.
[62] Doc. No. 1-1 at Figure 6.

transaction confirmation, a customer-specific, token-specific, or payment specific verification code, and/or selection of a payment instrument to use for the transaction."[63]  The '852 patent also tells us that a "stored value item" includes anything of value, for instance a gift card is both a stored value item[64] and a payment instrument.[65]  Once again Defendant has failed to address the as of the time on invention the heretofore inventive concept and focus of the '852 patent,  a two-step authorization process to secure online transactions, e.g. when a physical credit card is not presented.

In spite of a multiplicity of cases, Defendant's cited caselaw is not on point.  Defendant's cases *RDPA* involved "the use of a computer to perform well known business practices." [66] *In re Elbaum* involved "managing sales transaction activity."[67] *Boom! Payments, Inc. v. Stripe, Inc.*, involved a computerized escrow system.[68] *Western Express,* involved a simple money transfer method.[69] *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, involved paying for transit services with a credit card.[70] *NantWorks, LLC v. Niantic, Inc.* involved reconciling transactions between two users.[71] *Curb Mobility, LLC v. Kaptyn, Inc.,* involved accepting credit cards in taxicabs.[72] *Coding Techs., LLC v. Miss. Power Co.*, involved using a barcode on a mobile device to pay a bill.[73] *Mankes v. Fandango, LLC.*, involved a system for tracking and managing inventory.[74] *Gammino v. AT&T Co.*, involved allowing a buyer to select a method of payment.[75]

---

[63] Doc. No. 1-1 at 9:9-13.
[64] Doc. No. 1-1 at 4:63-67.
[65] Doc. No. 1-1 at 1:62-65.
[66] 2021 WL 2440700, at *13.
[67] 2021 WL 3923280 (Fed. Cir. Sept. 2, 2021).
[68] 839 F. App'x 528, 532 (Fed. Cir. 2021).
[69] 816 F. App'x at 486–87.
[70] 873 F.3d 1364, 1371–72.
[71] 2021 WL 24850, at *6 (N.D. Cal. Jan.4, 2021).
[72] 434 F. Supp. 3d 854, 859 (D. Nev. 2020).
[73] 2020 WL 8410430, at *3–4 (S.D. Miss. June 4, 2020).
[74] 238 F.Supp. 3d 751, 757 (E.D.N.C. 2017).
[75] 127 F. Supp. 3d 264, 272 (D. Del. 2015).

*PricePlay.com, Inc. v. AOL Advertising, Inc.,* involved a simple sales transaction.[76] *Fast 101 PTY Ltd v. CitiGroup Inc.,* involved receiving and storing a customer order, determining a discount, paying the seller the discounted amount, and receiving customer payment at a later date.[77] *Motivation Innovations, LLC v. Petsmart, Inc.*, involved a method and system for the use and redemption of discount offers.[78] *NexusCard, Inc. v. Kroger Co.*, involved a method for providing a "membership discount program."[79]

Plaintiff agrees with Defendant that each of these cases is simply using a computer to conduct a simple business transaction. However, the '852 patent is not simply using a computer to conduct a simple business transaction. The '852 patent is a solution to a problem brought on by computers and the proliferation of online purchases. The inventor sought a solution to gain discounts that are traditionally granted to Track 1 purchases when the card is present, such as at a brick-and-mortar shop. However, when the purchaser is making an online purchase, the card is not present and therefore the use of a credit card in an online purchase traditionally resulted in a higher fee as a Track 2 purchase, e.g., the card is not present.[80]

Defendant's case *Universal Secure Registry* is likewise not helpful as therein a merchant is given a code as a simple substitute for a purchaser's secure credit card information.[81] Simply substituting a code for a credit card number is not a technological solution to an issue in the prior art and therefore fundamentally different than the claims of the '852 patent.

Defendant's case *Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, is simply collecting, displaying, and analyzing information to reconcile check information against a ledger.[82] Checking

---

[76] 83 F. Supp. 3d 577, 581 (D. Del. 2015).
[77] 834 F. App'x 591 (Fed. Cir. 2020).
[78] 156 F. Supp. 3d 558, 568 (D. Del. 2016).
[79] 173 F. Supp. 3d 462, 466 (E.D.Tex. 2016).
[80] Doc. No. 1-1 at 7:1-56.
[81] 10 F.4th at 1349.
[82] 955 F.3d 971, 976 (Fed. Cir. 2020).

a number against a ledger is not a technological solution to an issue in the prior art and therefore fundamentally different than the claims of the '852 patent.

Defendant's case *Innovation Sciences, LLC v. Amazon.com, Inc.,* is similar to *Universal Secure Registry* in that a purchasers credit card information is sent to a second server but is then substituted for a code or encrypted.[83] Simply substituting a code for a credit card number, even including shifting the user to an alternate server, is not a technological solution to an issue in the prior art and therefore fundamentally different than the claims of the '852 patent.

Defendant's case *Smartflash LLC v. Apple Inc.,* relates to payment verification by adding additional code to the transaction.[84] Adding code to a credit card number is not a technological solution to an issue in the prior art and therefore fundamentally different than the claims of the '852 patent.

## IV.    THERE ARE INVENTIVE ASPECTS OF THE '852 PATENT THAT PRECLUDE DISMISSAL AT THIS STAGE.

To evaluate whether asserted claims satisfy *Alice*'s second step of "search[ing] for an 'inventive concept,'"[85] a court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."[86] While a court may determine patent eligibility at the Rule 12(b)(6) stage, it is "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."[87]  "Plausible factual allegations may preclude

---

[83] 778 F. App'x 859, 863 (Fed. Cir. 2019).
[84] 2016-1059, at *6 (Fed. Cir. Mar. 1, 2017).
[85] *Alice*, 573 U.S. at 217, 134 S.Ct. 2347
[86] *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1289 (Fed. Cir. 2018)
[87] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

dismissing a case under § 101."[88]  All facts pertinent to the eligibility question must be proven by clear and convincing evidence.[89]  Here, Plaintiff makes numerous factual allegations in the patent specification that are not rebutted by Defendant.

### A. Factual Allegations in the Complaint and Patent Specification Preclude Summary Judgment.

Even if this Court determines Plaintiff's claims are directed towards an abstract idea, patent eligibility is possible if the abstract idea include[s] 'additional features' to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."[90] "These additional features cannot simply be well-understood, routine, conventional activities previously known to the industry."[91]  Here, the primary improvement over the prior art mentioned in the patent specification is a claimed improvement, namely, a two-step authentication process performed by an intermediary service, where the intermediary service transmits a transaction notification to a mobile device, and the transaction notification message to provide information to continue the transaction.[92]

As such, there are factual allegations of an improvements over the prior art, which must be taken as true at this stage of the litigation,[93] namely:

> FIG. 2B illustrates a two-step authorization process performed by the intermediary service. After authenticating the initial authorization request from the acquirer . . . the intermediary service . . . transmits a transaction notification

---

[88] *Id.*

[89] *HP Inc.*, 881 F.3d at 1368 citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

[90] *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (quotations and alterations omitted); *see also Trading Techs.*, 921 F.3d at 1093 ("Step two 'looks more precisely at what the claim elements add' to determine if 'they identify an inventive concept in the application of the ineligible matter to which...the claim is directed." (quoting *SAP*, 898 F.3d at 1167).

[91] *ChargePoint*, 920 F.3d at 773 (quotation and alteration omitted); *see HP Inc.*, 881 F.3d at 1367 ("The second step of the *Alice* test is satisfied when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." (quotation and alteration omitted)

[92] Doc. No. 1-1 at 8:54-9:13.

[93] *Aatrix Software, Inc.*, 882 F.3d at 1125; *Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177, 180 (5th Cir. 2007).

message to a mobile device . . . that is associated with the customer. . . . The transaction notification message includes transaction information such as the amount, time, or location of the transaction. The transaction notification message may also request the customer . . . to provide information to continue the transaction, such as to provide a transaction confirmation, a customer-specific, token-specific, or payment instrument specific) verification code, and/or a selection of a payment instrument to use for the transaction.[94]

The '852 patent's specification teaches the claimed solution provided for online sales was not available prior to the invention of the claims of the '852 patent.[95]   Thus, taking all inferences in Plaintiff's favor,[96] dismissal at this stage is inappropriate.[97]

**B. The Claims of the '852 Patent Overcome a Specific Problem in online sales.**

The Claims of the '852 patent provide a solution to a specific problem arising in electronic commerce, namely allowing a user to purchase from an online vendor, where the credit card is not physically presented to the vendor, while availing themselves of a secure credit card transaction in order to receive lower fees due to reduced fraud.[98]   The patent specification provides that such transactions were not possible prior to the claimed invention, requiring users who desired to shop at an online vendor to accept higher fees due to fraud.[99]   Thus, the claimed improvements cannot be said to be conventional when viewing the claim as a whole.

Stated another way, the claims of the '852 patent are further patentable for similar reasons that the claims in *Messaging Gateway Sols., LLC v. Amdocs, Inc.*[100] were found patentable wherein the court in that case found the claims "directed to a problem unique to text-message telecommunication between a mobile device and a computer. The solution [ ] it provides is

---

[94] Doc. No. 1-1 at 8:54-9:13.
[95] *See id.* at 1:46-61.
[96] *Guidry*, 512 F.3d at 180.
[97] *Aatrix Software, Inc.*, 882 F.3d AT 1125; *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).
[98] Doc. No. at 1:46-61; 7:16-28.
[99] *See id.* at 1:46-61; 7:16-28.
[100] Civil Action No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408 (D. Del. Apr. 15, 2015).

tethered to the technology that created the problem."[101]  Similarly, the present claims are directed to a problem created by electronic commerce.  A technical solution is provided requiring a separate mobile device, "a two-step authentication process performed by an intermediary service, where the intermediary service transmits a transaction notification to a mobile device, and the transaction notification message to provide information to continue the transaction.[102] Stated another way, the present claims allow reduced fee electronic commerce where it would otherwise be impossible and thus are patent eligible.[103]

The present claims therefore, when "taken together as an ordered combination, ... recite an invention that is not merely the routine or conventional," use of a two-step authentication process performed by an intermediary service, where the intermediary service transmits a transaction notification to a mobile device, and the transaction notification message to provide information to continue the transaction[104]  The claims do not try to pre-empt every use of technology to secure an online transaction, but rather recite a specific way to facilitate secure online transactions thus claiming additional features that render the claims patent eligible.[105]

## VI. CONCLUSION AND PRAYER

Plaintiff Authwallet, LLC respectfully requests and prays that the Court deny, in its entirety, Defendant's Motion to Dismiss.

Respectfully submitted,

/s/ David J. Hoffman
David J. Hoffman
254 W 15th St., Apt. 2C
New York, New York 10011

---

[101] *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, Civil Action No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408, at *15-16 (D. Del. Apr. 15, 2015).
[102] Doc. No. 1-1 at 8:54-9:13.
[103] Doc. No. 1-1 at 1:46-61; 7:16-28; 8:54-9:13.
[104] Doc. No. 1-1 at 8:54-9:13.
[105] *See, e.g., DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014).

(917) 701-3117 (telephone)
djhoffman@djhoffmanlaw.com

***Attorneys for Authwallet, LLC***

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of November 22, 2021, with a copy of the foregoing via e-mail.

<u>/s/ William P. Ramey, III</u>
William P. Ramey, III