UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                        :

AUTHWALLET, LLC,                  :

                     :

             Plaintiff,     :

                     :           21-cv-5463 (LJL)

       -v-                :

                     :       <u>OPINION AND ORDER</u>

BLOCK, INC.,                 :

                     :

            Defendant.    :

                     :

------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendant Block, Inc. ("Block" or "Defendant") moves, pursuant to Federal Rule of Civil

Procedure 12(b)(6), to dismiss the complaint of Plaintiff AuthWallet, LLC ("AuthWallet")

against it for failure to state a claim.[1]

      For the following reasons, the motion to dismiss is granted.

## BACKGROUND

      AuthWallet is a Texas-based limited liability corporation.  Dkt. No. 1 (the "Complaint")

¶ 1.  Block is a corporation headquartered and incorporated in the state of New York.  *Id.* ¶ 2.

For the purposes of this motion, the Court accepts the well-pleaded allegations of the Complaint

as true.

---

[1] AuthWallet's action was originally brought against "Square, Inc."  *See* Dkt. No. 1.  On
December 21, 2021, Defendant Square, Inc. informed the Court that it changed its name to
Block, Inc. and moved to substitute Block, Inc. for Square, Inc. and to change the case caption
accordingly.  Dkt. No. 27.  Defendant agreed that the allegations asserted in the Complaint
against Square, Inc. shall be deemed asserted against Block, Inc., and Block, Inc. will be bound
by the service of summons on Square, Inc. and by the filings previously made by Square, Inc. in
the case.  *Id.*  The Court granted that motion on December 22, 2021.  Dkt. No. 28.

## I.      The '852 Patent

Plaintiff AuthWallet is the sole owner of all rights, title, and interest in U.S. Patent Number 9,292,852 (the "'852 Patent" or "Patent") entitled "System And Method For Applying Stored Value To A Financial Transaction." *Id.* ¶ 6.  The '852 Patent was duly and legally issued by the U.S. Patent and Trademark Office on March 22, 2016 and is owned by AuthWallet by assignment. *Id.* The patent relates to novel and improved methods and systems for processing financial transaction data. *Id.* ¶ 7.  It contains forty claims, which state as follows:

Claim 1:

A computer-implemented method for processing financial transaction data in a computing system including a processor and a storage area, the method comprising: receiving an authorization request generated as a result of a transaction by a purchaser at a point of purchase via an acquirer configured to receive authorization requests from a plurality of points of purchase, wherein the authorization request includes a purchaser identifier and transaction information, the transaction information including a transaction amount, and wherein the purchaser identifier identifies the purchaser that initiated the transaction;
based on the authorization request, determining one or more stored value items to apply to the transaction, wherein each stored value item includes an associated value, wherein the one or more stored value items are selected from a plurality of stored value items stored in the storage area, and wherein the plurality of stored value items includes stored value items provided by a plurality of different third parties;
transmitting a transaction indication message to a mobile device associated with the purchaser identifier, wherein the transaction indication message includes information about the determined one or more stored value items;
receiving an indication from a user of the mobile device that at least one stored value item should be applied against the transaction;
applying the indicated at least one stored value item to pay a first portion of the transaction amount; and
initiating a payment process to pay a remaining portion of the transaction amount by providing a modified transaction amount to the acquirer for submission to a payment association.

Dkt. No. 1, Ex. A at ECF pp. 36–37.

Claim 2: "The method of claim 1, wherein a stored value item is a coupon for use in transactions with a specified merchant or for a specified product." *Id.* at 37.

2

Claim 3: "The method of claim 1, wherein the associated value is expressed as a currency amount." *Id.*

Claim 4: "The method of claim 1, wherein the associated value is expressed as a percentage of a portion of the transaction amount." *Id.*

Claim 5: "The method of claim 1, wherein the associated value is expressed in non-currency units and further comprising converting the non-currency units to a currency amount using a conversion rate before applying the indicated at least one stored value item to the first portion of the transaction amount." *Id.*

Claim 6: "The method of claim 5, wherein the conversion rate is determined based on characteristics of the transaction." *Id.*

Claim 7: "The method of claim 1, wherein the transaction information identifies a product purchased during the transaction, and wherein a stored value item is determined based on the identified product." *Id.*

Claim 8: "The method of claim 1, wherein a stored value item is associated with an applicable time or time period and the stored value item is determined based on a time associated with the transaction." *Id.*

Claim 9: "The method of claim 1, wherein a stored value item is determined based on a transaction history of the purchaser." *Id.*

Claim 10: "The method of claim 1, wherein initiating a payment process comprises: generating a modified authorization request based on the received authorization request, wherein the modified authorization request includes a modified transaction amount based on the remaining portion of the transaction amount; and transmitting the modified authorization request to an issuing institution for authorization of payment." *Id.*

Claim 11: "The method of claim 1, wherein the one or more stored value items are uniquely associated with the purchaser identifier in the authorization request." *Id.*

Claim 12:

The method of claim 1, wherein a plurality of stored value items are contained in the storage area and each stored value item has associated transaction conditions under which a stored value item is to be applied, and wherein determining the one or more stored value items to apply to the transaction comprises selecting a stored value item from the plurality of stored value items in response to determining that the associated transaction conditions under which the stored value item is to be applied are satisfied by the authorization request.

*Id.*

Claim 13: "The method of claim 12, wherein the associated transaction conditions include an identity of a product being purchased." *Id.*

Claim 14: "The method of claim 12, wherein the associated transaction conditions include a time period during which the stored value item is valid." *Id.*

Claim 15:

A system for processing financial transaction data, the system comprising: a processor; a storage component configured to store a plurality of stored value items, wherein the plurality of stored value items includes stored value items provided by a plurality of different third parties; a communication module configured to receive an authorization request generated as a result of a transaction by a purchaser at a point of purchase via an acquirer configured to receive authorization requests from a plurality of points of purchase, wherein the authorization request includes a purchaser identifier and transaction information, the transaction information including a transaction amount, and wherein the purchaser identifier identifies the purchaser that initiated the transaction; and a stored value module configured to: based on the authorization request, determine one or more stored value item to apply to the transaction, wherein each stored value item includes an associated value, wherein the one or more stored value items are selected from the plurality of stored value items stored in the storage area, and; transmit a transaction indication message to a mobile device associated with the purchaser identifier, wherein the transaction indication message includes information about the determined one or more stored value items; receive an indication from a user of the mobile device that at least one stored value item should be applied against the transaction; apply the indicated at least one stored value item to pay a first portion of the transaction

4

amount; and initiate a payment process to pay a remaining portion of the transaction amount by providing a modified transaction amount to the acquirer for submission to a payment association.

*Id.*

Claim 16: "The system of claim 15, wherein a stored value item is a coupon for use in transactions with a specified merchant or for a specified product." *Id.*

Claim 17: "The system of claim 15, wherein the associated value is expressed as a currency amount." *Id.*

Claim 18: "The system of claim 15, wherein the associated value is expressed in non-currency units and wherein the stored value module is further configured to convert the non-currency units to a currency amount using a conversion rate before applying the indicated at least one stored value item to the first portion of the transaction amount." *Id.*

Claim 19: "The system of claim 18, wherein the conversion rate is determined based on characteristics of the transaction." *Id.*

Claim 20: "The system of claim 15, wherein the transaction information identifies a product purchased during the transaction, and wherein the stored value item is determined based on the identified product." *Id.*

Claim 21: "The system of claim 15, wherein a stored value item is associated with an applicable time or time period and the stored value item is determined based on a time associated with the transaction." *Id.*

Claim 22: "The system of claim 15, wherein a stored value item is determined based on a transaction history of the purchaser." *Id.*

Claim 23:

The system of claim 15, wherein initiating a payment process comprises: process comprises: generating a modified authorization request based on the received authorization request, wherein the modified authorization request includes a modified transaction amount based on the remaining portion of the transaction amount; and transmitting the modified authorization request to an issuing institution for authorization of payment.

*Id.* at 37–38.

Claim 24: "The system of claim 15, wherein the one or more stored value items are uniquely associated with the purchaser identifier in the authorization request." *Id.* at 38.

Claim 25:

The system of claim 15, wherein a plurality of stored value items are contained in the storage area and each stored value item has associated transaction conditions under which a stored value item is to be applied, and wherein determining the one or more stored value items to apply to the transaction comprises selecting a stored value item from the plurality of stored value items in response to determining that the associated transaction conditions under which the stored value item is to be applied are satisfied by the authorization request.

*Id.*

Claim 26: "The system of claim 25, wherein the associated transaction conditions include an identity of a product being purchased." *Id.*

Claim 27: "The system of claim 25, wherein the associated transaction conditions include a time period during which the stored value item is valid." *Id.*

Claim 28:

A computer-readable medium containing instructions for processing financial transaction data in a computing system including a processor and an associated storage area, by a method comprising: receiving an authorization request generated as a result of a transaction by a purchaser at a point of purchase via an acquirer configured to receive authorization requests from a plurality of points of purchase, wherein the authorization request includes a purchaser identifier and transaction information, the transaction information including a transaction amount, and wherein the purchaser identifier identifies the purchaser that initiated the transaction; based on the authorization request, determining one or more stored value items to apply to the transaction wherein the stored value item includes an associated value, wherein the plurality of stored value items includes stored value

items provided by a plurality of different third parties; transmitting a transaction indication message to a mobile device associated with the purchaser identifier, wherein the transaction indication message includes information about the determined one or more stored value items receiving an indication from a user of the mobile device that at least one stored value item should be applied against the transaction; applying the stored value item to pay a first portion of the transaction amount; and initiating a payment process to pay a remaining portion of the transaction amount by providing a modified transaction amount to the acquirer for submission to a payment association.

*Id.*

Claim 29: "The computer-readable medium of claim 28, wherein a stored value item is a coupon for use in transactions with a specified merchant or for a specified product." *Id.*

Claim 30: "The computer-readable medium of claim 28, wherein the associated value is expressed as a currency amount." *Id.*

Claim 31: "The computer-readable medium of claim 28, wherein the associated value is expressed in non-currency units and further comprising converting the non-currency units to a currency amount using a conversion rate before applying the indicated at least one stored value item to the first portion of the transaction amount." *Id.*

Claim 32: "The computer-readable medium of claim 31, wherein the conversion rate is determined based on characteristics of the transaction." *Id.*

Claim 33: "The computer-readable medium of claim 28, wherein the transaction information identifies a product purchased during the transaction, and wherein a stored value item is determined based on a product purchased during the transaction." *Id.*

Claim 34: "The computer-readable medium of claim 28, wherein a stored value item is associated with an applicable time or time period and the stored value item is determined based on a time associated with the transaction." *Id.*

Claim 35: "The computer-readable medium of claim 28, wherein a stored value item is determined based on a transaction history of the purchaser." *Id.*

Claim 36:

The computer-readable medium of claim 28 wherein initiating a payment process comprises: generating a modified authorization request based on the received authorization request, wherein the modified authorization request includes a modified transaction amount based on the remaining portion of the transaction amount; and transmitting the modified authorization request to an issuing institution for authorization of payment.

*Id.*

Claim 37: "The computer-readable medium of claim 28 wherein the one or more stored value items are uniquely associated with the purchaser identifier in the authorization request." *Id.*

Claim 38:

The computer-readable medium of claim 28, wherein a plurality of stored value items are contained in the storage area and each stored value item has associated transaction conditions under which a stored value item is to be applied, and wherein determining the one or more stored value items to apply to the transaction comprises selecting a stored value item from the plurality of stored value items in response to determining that the associated transaction conditions under which the stored value item is to be applied are satisfied by the authorization request.

*Id.*

Claim 39: "The computer-readable medium of claim 38 wherein the associated transaction conditions include an identity of a product being purchased." *Id.*

Claim 40: "The computer-readable medium of claim 38 wherein the associated transaction conditions include a time period during which the stored value item is valid." *Id.*

## II.    Defendant's Products and Methods

Defendant Block "maintains, operates, and administers online platforms, products and services that facilitate financial transaction data processing." Dkt. No. 1 ¶ 8. Block offers

mobile payment options that provide a means for customers to earn and redeem rewards for multiple vendors. *Id.* ¶ 9. Block also receives pre-authorizations from debit and credit cards used on its platforms; the pre-authorization requests include purchaser identification and transaction amounts. *Id.* Block can add dollar amounts, points, discounts, and other awards on transactions and can send notifications of these awards to a customer's cell phone. *Id.* When customers use these benefits toward future eligible purchases, Block pays the transaction amount and deducts any redemption values after the purchase has completed. *Id.*

## III.    The Alleged Infringement and Current Dispute

AuthWallet alleges that Block's payment platforms infringe on one or more of claims 1–40 of the '852 Patent, either literally or under the doctrine of equivalents.[2] *Id.* ¶ 8.

AuthWallet alleges that "Defendant put the inventions claimed by the '852 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service." *Id.* Defendants' actions thus "caused those claimed invention embodiments as a whole to perform" and benefitted Defendant financially and commercially. *Id.*

With respect to claims 1–18, AuthWallet alleges that Defendant has induced infringement and has contributorily infringed, and continues to do so by:

> actively encourag[ing] or instruct[ing] others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., payment products and services that facilitate purchases from a vendor using a bridge computer) such as to cause infringement of one or more of claims 1–18 of the '852 patent, literally or under the doctrine of equivalents.

---

[2] The doctrine of equivalents states that "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1016 (Fed. Cir. 2006) (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)).

*Id.* ¶¶ 10–11.  AuthWallet also alleges that Defendant has known or should have known about the '852 Patent and underlying technology since at least the date the patent was issued.  *Id.*

AuthWallet filed its complaint in this case on June 7, 2021, bringing a claim under 35 U.S.C. § 271, *et seq*.  Dkt. No. 1.  It seeks compensatory damages; injunctive relief against future infringement; associated attorneys' fees, expenses and costs incurred in this action; and any other relief this Court deems proper.  Dkt. No. 1 at 8–9.  The case was reassigned to the undersigned on June 22, 2021.  Block filed its motion to dismiss on October 15, 2021.  Dkt. No. 19. AuthWallet filed its response in opposition on November 22, 2021, Dkt. No. 23, and Block replied on December 17, 2021.  Dkt. No. 26.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Put another way, the plausibility requirement 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim].'"  *RDPA, LLC v. Geopath, Inc.*, 543 F. Supp. 3d 4, 16 (S.D.N.Y. 2021) (quoting *Twombly*, 550 U.S. at 556); *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Although the Court must accept all the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The ultimate issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235–36 (1974)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." (internal quotation marks and citation omitted)).

The Federal Circuit has affirmed that subject matter eligibility under Section 101 of the Patent Act, 35 U.S.C. §§ 100, *et seq.*, is a question of law suitable for resolution at the pleading stage of a patent case. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law."). The focus of a Section 101 inquiry is on the asserted claims. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012).

## DISCUSSION

Block argues in support of its motion to dismiss that claims 1–40 of the '852 Patent are not patentable under 35 U.S.C. § 101. Block contends that claim 1 is directed to the abstract idea and conventional business practice of processing a discounted payment in a sales transaction and simply implements that abstract idea using computer technology. It also contends that the remaining claims are ineligible for patenting for the same reasons that claim 1 is ineligible and that claim 1 is thus representative. Specifically, it argues that claims 15 and 28 cover systems

and media, respectively, that are configured to perform the same method described in claim 1 and that claims 2–14, 16–27, and 29–40 are dependent on claims 1, 15, or 28, and merely recite additional layers of abstraction. Block separately argues that claims 28–40 are patent-ineligible because they encompass transitory computer-readable media.

AuthWallet also treats claim 1 as representative.  Accordingly, the Court will start its analysis with claim 1; its analysis and conclusion with respect to claim 1 applies to claims 2–40.

## I.    Patentability of the Subject Matter

Block argues that the claims of the '852 Patent are ineligible for protection under Section 101 of the Patent Act because they are directed to the abstract concept of processing discounted payments during sales transactions.  Section 101 of the Patent Act provides for four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter."  35 U.S.C. § 101.  The capacious language of the Patent Act is not without limit, however.  Courts "have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and *abstract ideas* are not patentable."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (emphasis added).  Such concepts are "the basic tools of scientific and technological work," *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972), and "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it," *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72 (2012).  Thus, the Supreme Court has affirmed that patent claims that monopolize the "building blocks of human ingenuity" are not extended protection.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

The prohibition on patenting "abstract ideas" reflects "the longstanding rule that '[a]n idea of itself is not patentable.'"  *Gottschalk*, 409 U.S. at 67 (1972) (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874)).  The exception prevents patenting a result where "it

matters not by what process or machinery the result is accomplished." *O'Reilly v. Morse*, 56
U.S. 62, 113 (1853).

The Supreme Court has emphasized that courts must "tread carefully in construing [the]
exclusionary provision lest it swallow all of patent law." *Alice*, 573 U.S. at 217.  Because "[a]t
some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural
phenomena, or abstract ideas' . . . an invention is not rendered ineligible for patent simply
because it involves an abstract concept." *Id.* (quoting *Prometheus Lab'ys*, 566 U.S. at 71).
"'Applications' of such concepts 'to a new and useful end' . . . remain eligible for patent
protection." *Id.* (quoting *Gottschalk*, 409 U.S. at 67).

The Supreme Court has laid a path for courts to navigate the careful terrain that lies
between claims of patent eligibility and claims of abstractness.  In *Alice*, the Supreme Court
established a two-part test for determining whether an idea is unpatentable as a law of nature,
natural phenomenon, or abstract idea (the "*Alice* test").  First, the court determines whether the
claims at issue are directed to a patent-ineligible concept, such as an abstract idea.  *Id.* at 216.
The court must consider the claims "in their entirety to ascertain whether their character as
a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343, 1346 (Fed. Cir. 2015).  Courts should not "simply ask whether the claims involve
a patent-ineligible concept, because essentially every routinely patent-eligible claim involving
physical products and actions involves a law of nature and/or natural phenomenon," *Enfish, LLC
v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016), and they "'must be careful to avoid
oversimplifying the claims' by looking at them generally and failing to account for the specific
requirements of the claims," *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299,
1313 (Fed. Cir. 2016) (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed.

Cir. 2016)).  At this first step of the *Alice* test, the focus of the inquiry is "the claimed advance over the prior art."  *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019).

The Federal Circuit has provided specific guidance for assessing patents involving computer technology at this first step.  When "the patent involves computer software, *Alice* step one requires a court to 'articulate with specificity what the claims are directed to, and ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'"  *Gabara v. Facebook, Inc.*, 484 F. Supp. 3d 118, 124 (S.D.N.Y. 2020) (quoting *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017)). The "'mere automation of manual processes using generic computers . . . does not constitute a patentable improvement in computer technology.'"  *Trading Techs.*, 921 F.3d at 1384 (quoting *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017)).  An asserted improvement in computer functionality must have "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it."  *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1349 (Fed. Cir. 2018).

The inquiry does not end with the court's determination that the claims at issue are directed to a patent-ineligible concept.  The second step of the *Alice* test requires a court to ask "[w]hat else is there in the claims before [it]?"  *Prometheus Lab'ys*, 566 U.S. at 78.  To answer that question, a court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application.'"  *Alice*, 573 U.S. at 217 (quoting *Prometheus Lab'ys*, 566 U.S. at 78).  Step two of the analysis asks whether there is an "inventive concept—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'"  *Id.* at 217–18

14

(quoting *Prometheus Lab'ys*, 566 U.S. at 72–73).  "In looking for an inventive concept, a court must consider the elements of the claims 'both individually and as an ordered combination' to determine whether the additional elements have transformed the claim into a patent eligible application."  *Gabara*, 484 F. Supp. 3d at 124 (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016)).  "A claim contains an inventive concept if it include[s] additional features that are more than well-understood, routine, conventional activities."  *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1374 (Fed. Cir. 2017).  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018).  Thus, "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'"  *Alice*, 573 U.S. at 221 (quoting *Prometheus Lab'ys*, 566 U.S. at 77).  The "transformation [of an idea] into a patent-eligible application requires 'more than simply stat[ing] the [abstract idea] while adding the words "apply it."'"  *Id.* (quoting *Prometheus Lab'ys*, 566 U.S. at 72).

A court need not address "each asserted claim in a § 101 analysis . . . when the claims are 'substantially similar and linked to the same abstract idea.'"  *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 386 (S.D.N.Y. 2018) (quoting *Content Extraction & Trans. LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2012)).  All forty claims of the '852 Patent are substantially similar because they are linked to the method of payment processing in sales transactions outlined in claim 1.[3]  Therefore, the Court's application of the *Alice* test to

---

[3] Block argues this point in its brief, and AuthWallet does not contest it.

claim 1 equally applies to the remainder of the claims in the '852 Patent.  *See RDPA*, 543 F.

Supp. 3d at 19 ("Because the five Asserted Patents are substantially similar, one can serve for all

five of them."); *see also Gabara*, 484 F. Supp. 3d at 126 ("The other claims in the Image Patents

are substantially similar to Claim 1 of the '400 Patent, with only semantic differences. None of

those differences are material to the § 101 analysis undertaken in either the first or second

step.").

   A.   ***Alice*** **Step One**

   Block argues that claim 1 fails step one of the *Alice* test because the '852 Patent simply

constitutes a computerized version of processing financial transactions—a longstanding and

conventional business practice.  Dkt. No. 19 at 9.  It further argues that, after stripping the claim

of its "verbose syntax and technical jargon," it recites a conventional economic transaction with

four basic steps:

> (1) a customer initiates a sales transaction by providing a personal identifier
> contained in, e.g., a credit card or a mobile device; (2) an intermediary receives
> information about the transaction via an acquirer, consults a database to determine
> whether discounts are available for that transaction, and sends the customer a
> message; (3) the customer indicates via a mobile device which discounts she wishes
> to apply; and (4) the intermediary completes the transaction while accounting for
> any applied discounts in the final price paid.

*Id.* at 9–10.  AuthWallet responds that claim 1 is directed to concrete steps that are not patent

ineligible because they "provid[e] increased fraud security for financial transactions when a

physical device cannot be presented to the merchant by the purchaser by providing out-of-band

confirmation, where the out-of-band confirmation is a secondary source of identifying

information provided by an intermediary service."  Dkt. No. 23 at 5 (citing Dkt. No. 1, Ex. A at

2:47–2:63).

   The '852 Patent is directed to the abstract idea and well-established business practice of

processing payments during a sales transaction where a benefit, such as a discounted payment, is

given to the purchaser for use in future transactions.  The patent describes that computer

technology can be used to provide merchants and purchasers with an electronic form of a

discounted transaction that is common among brick-and-mortar retailers without "a way of

achieving it."  *Ancora Techs., Inc.*, 908 F.3d at 1349.  For years, retailers have provided coupons

and other financial incentives to customers during purchase.  The '852 Patent simply describes

that that conventional business practice may be effected by technology rather than by hand.

Block's citations to *In re Elbaum*, 2021 WL 3923280 (Fed. Cir. Sept. 2, 2021) and

*Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021) to support the

proposition that the '852 Patent speaks to the abstract idea of processing a discounted payment in

sales transactions are persuasive.  In *In re Elbaum*, the Federal Circuit held invalid a patent

application related to selling products and services on the internet using physical retail locations.

*In re Elbaum*, 2021 WL 3923280 at *1.  The patent described a method for an internet seller to

provide a retail location with a code that contains information about a particular product or

service.  *Id.*  The customer would then use the code to access information about the product or

service and ultimately make a purchase via a computer.  *Id.*  When the purchase was made, the

internet seller would pay the retail location a finder's fee.  *Id.*  The Federal Circuit found that the

process described by the patent of storing, receiving, analyzing, and processing data—in other

words, managing sales transaction activity—was not novel; it was a process "ordinarily

performed in the stream of commerce."  *Id.* at *2 (internal quotation marks omitted).

Accordingly, the patent failed to pass step one of the *Alice* test because the patent's method for

providing information to consumers and allowing them to utilize that information to engage in

commercial transaction was an abstract idea.  *Id.*

*Universal Secure Registry* involved a suit against Apple, Inc. for infringing upon all claims of a group of patents that recited means for securing electronic payment transactions. *Universal Secure Registry*, 10 F.4th at 1345.  Specifically, the patents addressed technology allowing consumers to conveniently make credit card payments with a high degree of security without physically using a magnetic strip reader.  *Id.*  One of the methods allowed the consumer to securely purchase products without providing credit card information to the merchant.  *Id.* The Federal Circuit declared all patents to be invalid under *Alice* step one because the claims "broadly recite[d] generic steps and results" as opposed to a "a specific solution to a technological solution."  *Id.* at 1355.  In so holding, the court explained that "[i]n our view . . . the claims recite 'conventional actions in a generic way'—e.g., authenticating a user using conventional tools and generating and transmitting that authentication—without 'improv[ing] any underlying technology.'"  *Id.* at 1352 (citing *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)).

The '852 Patent outlines a process for processing financial transaction data using authorization requests and conferring discounts and benefits to the consumer for use with future purchases with the retailer.  Similar to the patent in *In re Elbaum*, the '852 Patent describes sales transaction activity that is "ordinarily performed" in the stream of commerce.  *In re Elbaum*, 2021 WL 3923280 at *2.  This sales transaction activity speaks to the abstract concepts of an intermediary managing and authenticating a transaction between a consumer and a retailer as well as that intermediary managing discounts and benefits—such as coupons—that are conferred to the consumer during the transaction, which the consumer can then use on a future occasion. In *RDPA*, this Court recognized that the Federal Circuit has long held that "the use of a computer to perform well-known business practices [is] not patentable."  *RDPA*, 543 F. Supp. 3d at 20

(citing *TNS Media Research LLC v. Tivo Research & Analytics, Inc.*, 223 F. Supp. 3d 168, 178

(S.D.N.Y. 2016)).  AuthWallet argues that the '852 Patent does not "simply us[e] a computer to

conduct a simple business transaction."  Dkt. No. 23 at 13.  Rather, according to AuthWallet, it is

a solution to the problem brought on by the proliferation of online purchases of purchasers

having to use credit cards that are not physically present in online transactions and the fact that

the lack of a physical card led to higher transaction fees.  *Id.*  The Patent, according to

AuthWallet, allows access to discounts in transactions where a credit card is not presented that

otherwise would have been reserved for brick-and-mortar shops when the card is presented.  *Id.*

However, AuthWallet's argument fails for the same reason that the patents in *Universal Secure*

*Registry* were found to speak to abstract ideas.  The '852 Patent claims recite a secure transaction

method where consumers can make credit card payments without physically presenting their

cards and preventing the credit card information from being relayed to the retailer.  The patents

in *Universal Secure Registry* and the '852 Patent both mitigate the online credit card

transactional security concerns by having the intermediary manage and transmit authentication

requests, which are processes that the Federal Circuit found to be "conventional" and "generic."

*Universal Secure Registry*, 10 F.4th at 1345.  The '852 Patent also does not speak to specific or

technical problems and solutions but rather recites generic steps and results.  *See, e.g.*, Dkt. No.

1, Ex. A at 36 ("[R]eceiving an authorization request generated as a result of a transaction by a

purchaser at a point of purchase via an acquirer configured to receive authorization requests from

a plurality of points of purchase . . . .").

AuthWallet does not point the Court to case law to respond to Block's arguments that the

'852 Patent speaks to an abstract idea concerning the management of financial transactions.

Instead, AuthWallet contends that the cases cited by Block are not on point here because, unlike

the '852 Patent, the patents in those cases "simply us[ed] a computer to conduct a simple business transaction." Dkt. No. 23 at 13. AuthWallet is correct that those cases involved the use of a computer to perform commonly used and well-known business practices.[4] But AuthWallet presents no persuasive argument as to why the '852 Patent differs from these cases or recites more than the "mere automation of manual process using generic computers." *Trading Techs.*, 921 F.3d at 1384. For example, in *RDPA*, this Court held that patents for tracking exposure and reaction to public media displays were directed to the abstract idea of collecting and analyzing data, despite the fact that the patents claimed to solve data collection issues specifically in out-of-home media contexts by using GPS technology. *RDPA*, 543 F. Supp. 3d at 19. Similarly, the Court's conclusion that '852 Patent's management of online financial transaction data speaks to an abstract idea of processing a discounted payment in a sales transaction is not undermined by the fact that the Patent seeks to solve security and transaction fee issues in non-physical credit card transactions. The "narrow context . . . cannot save [it] from [the] conclusion" that processing discounted payments in sales transactions is an abstract idea. *Id.*

  Because managing the processing of online financial transaction data using authorization requests and conferring discounts and benefits to the consumer for future purchases are abstract ideas for the purposes of Section 101, the claims of Patent '852 are ineligible at *Alice* step one.

---

[4] *RDPA*, 543 F. Supp. 3d; *In re Elbaum*, 2021 WL 3923280; *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528 (Fed. Cir. 2021); *Western Express Bancshares, LLC v. Green Dot Corp.*, 816 F. App'x 485 (Fed. Cir. 2020); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364 (Fed. Cir. 2017); *NantWorks, LLC v. Niantic, Inc.*, 2021 WL 24850 (N.D. Cal. Jan.4, 2021); *Curb Mobility, LLC v. Kaptyn, Inc.*, 434 F. Supp. 3d 854 (D. Nev. 2020); *Coding Techs., LLC v. Miss. Power Co.*, 2020 WL 8410430 (S.D. Miss. June 4, 2020); *Mankes v. Fandango, LLC.*, 238 F.Supp.3d 751 (E.D.N.C. 2017); *Gammino v. AT&T Co.*, 127 F. Supp. 3d 264 (D. Del. 2015); *PricePlay.com, Inc. v. AOL Advertising, Inc.*, 83 F. Supp. 3d 577 (D. Del. 2015); *Fast 101 PTY Ltd v. CitiGroup Inc.*, 834 F. App'x 591 (Fed. Cir. 2020); *Motivation Innovations, LLC v. Petsmart, Inc.*, 156 F. Supp. 3d 558 (D. Del. 2016); *NexusCard, Inc. v. Kroger Co.*, 173 F. Supp. 3d 462 (E.D. Tex. 2016); *Universal Secure Registry*, 10 F.4th 1342.

B.     *Alice* **Step Two**

Since the '852 Patent is deemed ineligible under *Alice* step one, the Court proceeds to *Alice* step two.  Under step two of the *Alice* test, the court must "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 221.  To be eligible at *Alice* step two, a patent must reflect "an inventive concept in the non-abstract application realm."  *SAP*, 898 F.3d at 1168.  "Appending purely conventional steps to an abstract idea does not supply a sufficiently inventive concept."  *In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016).  "[T]o impart patent-eligibility to an otherwise unpatentable process under the theory that the process is linked to a machine, the use of the machine must impose meaningful limits on the claim's scope."  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) (internal quotation marks omitted).

Patent '852 does not pass muster under *Alice* step two.  Block argues that claim 1 merely automates the longstanding business practice of discounted payment transactions using conventional, generic computer technology.  Dkt. No. 19. at 10.  AuthWallet responds that the primary improvement to electronic commerce is the "two-step authentication process performed by an intermediary service, where the intermediary service transmits a transaction notification to a mobile device, and the transaction notification message to provide information to continue the transaction."  Dkt. No. 23 at 15 (citing Dkt. No. 1, Ex. A at 8:54–9:13).  However, claims 1–40 simply use two-step authentication processes and data storage mechanisms to manage online payment transactions with discounts.  No claim of Patent '852 recites an inventive concept that transforms the abstract idea of processing discounts on payment transactions into a patent-eligible application.  "If anything, the claim recites generic computer functions, which the specification describes are carried out by conventional computer components."  *In re Elbaum*,

2021 WL 3923280, at *2; *see Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d at 905, 912 (Fed. Cir. 2017) (holding that the claims lacked an inventive concept where the claims recited only well-known and conventional ways to allow generic communication between a sender and recipient using generic computer technology).

In *In re Elbaum*, the Federal Circuit held that the patent—which disclosed a method for allowing an internet seller to provide a retail location with a code that contains information about a particular product or service—did not recite any incentive concept that transformed the abstract idea into a patent-eligible application. *In re Elbaum*, 2021 WL 3923280, at *2. The patent recited "generic computer functions, which . . . are carried out by conventional computer components." *Id.* The online credit card mechanism patent in *Universal Secure Registry* also failed to supply an inventive concept because "verifying the identity of a user to facilitate a transaction is a fundamental economic practice." *Universal Secure Registry*, 10 F.4th at 1353. The '852 Patent's two-factor authentication innovations not only concern generic computer functions to be carried out by conventional computer components to produce discounted payment transactions, but involve authorizing and facilitating transactions, which are fundamental economic practices.

Alternatively, AuthWallet argues that the claims of the '852 Patent overcome a specific problem in electronic commerce since they facilitate "purchase[s] from an online vendor, where the credit card is not physically presented to the vendor, while [users] avail[] themselves of a secure credit card transaction in order to receive lower fees due to reduced fraud." Dkt. No. 23 at 16. To support its argument, AuthWallet directs the Court to *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, 2015 WL 1744343 (D. Del. Apr. 15, 2015). The facts here do not fall within *Amdocs*. In *Amdocs*, the court assessed two patents that outlined a "method that enables a device

that ordinarily cannot send a message to a different device to do so," which the court found to be "essentially the same as [the abstract idea of] a translator assisting two people who speak different languages to communicate with each other." *Amdocs*, 2015 WL 1744343, at *4. However, because the patents (1) contained solutions to problems unique between text-message communications between a mobile device and a computer, and (2) were rooted in computer technology to overcome a problem arising in computer networks, the court found that the patents satisfied *Alice* step two. *Id.* at *5–*6. *Amdocs* is inapposite to the facts surrounding Patent '852. Problems of online fraud and consumer authentication are not unique to online discounted sales. Brick-and-mortar retailers who provide for coupons and other discounted pricing schemes have long faced fraud and verification issues, and non-commercial transactions across the internet and among other computer interactions readily involve issues of fraud and misrepresentation. Nevertheless, AuthWallet does not connect fraud to the asserted claims. "The focus of a Section 101 inquiry is on the asserted claims." *RDPA*, 2021 WL 2440700, at *9 (citing *Dealertrack*, 674 F.3d at 1334).

Finally, AuthWallet fails to argue that the '852 Patent will not preempt significant use of the abstract concept of processing discounted payments in sales transactions. Limiting the '852 Patent to e-commerce does not narrow preemption concerns because of the proliferation of online sales in the marketplace in today's day and age. While AuthWallet argues that "[t]he claims do not try to pre-empt every use of technology to secure an online transaction," Dkt. No. 23 at 17, "the absence of complete preemption does not demonstrate patent eligibility," *Return Mail, Inc. v. U.S. Postal Serv.*, 868 F.3d 1350, 1370 (Fed. Cir. 2017) (quoting *Ariosa Diagnostics, Inc. v. Sequenom, Inc.,* 788 F.3d 1371, 1379 (Fed. Cir. 2015)), *rev'd on other grounds*, 139 S. Ct. 1853 (2019).

Further factual development is not necessary for determining whether Patent '852 includes an inventive concept under *Alice* step two.  Because the Patent's two-factor authentication and reduced fraud innovations speak solely to the abstract idea concerning discounted payment transactions under *Alice* step one, "no further factual development is needed in order for the Court to determine that dismissal is appropriate."  *RDPA*, 543 F. Supp. 3d at 25.

## II.    Transitory Computer-Readable Media

Block argues, in the alternative, that claims 28–40 should be held patent-ineligible as a matter of law because they encompass transitory computer-readable media.  Because the Court dismisses the case based on the eligibility of the '852 Patent under Section 101 of the Patent Act, the Court does not reach the issue of transitory computer-readable media.

### CONCLUSION

For the foregoing reasons, Block's motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to close Dkt. No. 18 and to close the case.


SO ORDERED.


Dated: May 3, 2022
        New York, New York                                  _____
                                                            LEWIS J. LIMAN
                                                            United States District Judge

24